communicated with nobody in his presence with regard to them, except with Toner, about the carriage and horse. A comparison of that will with the will of April 24th shows that there is little material difference between them, except with regard to the residuary legatee. In the will of May 25th she had reinserted Le Page as residuary legatee, which position he had occupied towards her ever since 1881, except one month. The other provisions of the will are substantially like the will which was made on the 24th of April.

We have thus gone over in a general way all the testimony which is relied upon as showing that the will was obtained by undue influence practiced by Le Page upon Mrs. Spratt, and we have reached the conclusion that the surrogate erred in his decision on that point.

We have examined the various exceptions taken to the ruling of the surrogate; but, as the conclusion reached above will require a new trial of the issue of undue influence, it is unnecessary to say more with regard to it than that many of them proceeded upon an erroneous principle. The evidence of Cole, which was objected to and excluded as incompetent, under section 829 of the Code, was plainly competent. So was the evidence of Mrs. Le Page. She had been examined fully as to the transactions with Mrs. Spratt, and as to the time when she became acquainted with her; and, by that course of examination, the contestants had opened the whole subject, so that she was competent to testify upon it; and it was error to exclude her testimony upon the grounds to which objection was made. But it is unnecessary to pursue the investigation of these exceptions further. The conclusion of our examination is that the decree of the surrogate must be reversed, and the case must be sent for trial by jury in the supreme court upon two questions: First. Was the paper writing dated on the 25th of May, 1893, the last will and testament of Julia Ann Spratt? And, second, was such paper writing procured by fraud and undue influence of Robert Nelson Le Page?

The costs of this appeal are to abide the event of the final determination of the case, after the new trial shall have been had. All concur.

---

(3 App. Div. 572.)

SILVER v. WESTERN ASSUR. CO. OF TORONTO, CANADA.

(Supreme Court, Appellate Division, First Department. April 10, 1896.)

1. FOREIGN INSURANCE COMPANY—SERVICE OF SUMMONS.
   Code Civ. Proc. § 432, provides that personal service of summons upon a foreign corporation must be made by delivering a copy thereof within the state (1) to certain officers therein mentioned; (2) to a person designated for the purpose by the corporation; (3) if no person so designated and no officer specified in subdivision 1 can be found, etc., to the cashier, a director, or a managing agent of the corporation. Laws 1892, c. 690, § 30, provided that service upon foreign insurance companies might be made by service upon the insurance commissioner. *Held*, in an action against a foreign insurance company, that it was not necessary to serve the summons upon the insurance commissioner.

2. SAME—RESIDENT AGENT.
   It was not error to refuse to set aside service on one whom the affidavits of defendant's attorney showed to be a special agent for defendant, but

,did not show that he was not also one of the persons mentioned in sub-division 1 or 3 of said section 432, nor that any person was designated upon whom to make service as provided in subdivision 2.

Appeal from special term, New York county.

Action by Helen Silver against the Western Assurance Company of Toronto, Canada. From an order made at special term, which vacated a former order made on default setting aside the service of summons and complaint in the action, and which then denied defendant's motion to set aside such service, defendant appeals. Affirmed.

February 6, 1896, George A. Stearns made an affidavit entitled in the action, wherein he stated, in substance, that he was the attorney for the defendant in the action for the motion only; that defendant was a foreign corporation organized under the laws of Canada; that it was doing business in this state, and had complied with the laws of the state; that pursuant to law the defendant had duly designated the superintendent of insurance of the state as the person on whom service of all process in the state must be made, and such designation was still in force, as appeared by a certificate of said superintendent in deponent's possession certifying that defendant filed in his department July 16, 1884, an appointment of the superintendent as its attorney to receive service of process in the state under the provisions of chapter 346, Laws 1884, and that such appointment had not been revoked, and was still in force and effect; that one Blackwell was a special agent for defendant, and that his duty was to act for the defendant in receiving proofs of loss and in adjusting losses, and that deponent had been informed by said Blackwell that a summons and complaint in this action were left with him, although he (Blackwell) expressly stated that he was not the proper person upon whom to make service. Upon this affidavit an order to show cause was made, and afterwards, the plaintiff being in default, the order was made, setting aside the service of the summons and complaint. Afterwards the attorney for the plaintiff made an affidavit, in which he stated, among other things, that the action was commenced by the service of the summons and complaint upon Mr. Blackwell, the agent of defendant. Subsequently the default was opened, and the motion to set aside the service was denied. The only facts upon which the court acted in denying the motion to set aside the service were those stated in these two affidavits above referred to. The summons and complaint were not used on the motion, and are not in the papers upon this appeal.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTER-SON, O'BRIEN, and INGRAHAM, JJ.

George A. Stearns, for appellant.
Abraham H. Sarasohn, for respondent.

WILLIAMS, J. It is conceded here that the court at special term erred in placing its decision upon the failure of defendant to make the designation provided for in chapter 349, Laws 1895. That act related solely to justices' courts, and had no application to courts of record. The only question is whether the service was properly made by delivering copies of the summons and complaint to Blackwell, the agent of defendant, under subdivision 3, § 432, Code Civ. Proc. That section provides that:

"Personal service of the summons upon a foreign corporation must be made by delivering a copy thereof within the state, (1) to the president, treasurer or secretary, or if the corporation lacks either of these officers, to the officer performing corresponding functions under another name. (2) To a person designated for the purpose by a writing under the seal of the corporation and the signature of the president, vice-president or other acting head accompanied with a written consent of the person designated and filed in the office of the secretary of state. [The section then provides for the contents of

the designation, and that it shall remain in force until a written revocation is filed, etc.] (3) If such a designation is not in force or if neither the person designated nor any officer specified in subdivision 1, of this section can be found with due diligence, and the corporation has property within the state, or if the .·ause of action arose therein, to the cashier, a director, or a managing agent of the corporation within the state."

The defendant made the motion to set aside the service, and it was incumbent upon it, in order to obtain the relief sought for, to show facts from which the court could determine that the service was improperly made. We do not think such facts were shown by the papers used on the motion. The appointment of superintendent of insurance as attorney to receive service of process was made under chapter 346, Laws 1884 (not 1894, as stated in the printed papers). The appointment was made in 1884, after the passage of the act of that year. That act was repealed by chapter 690, Laws 1892, and section 30 of the later act was enacted in place of the provisions of the act of 1884. The act of 1884 and the act of 1892, so far as the question here involved is concerned, were substantially the same, and provided, in effect, that a foreign insurance corporation should execute and file in the office of the superintendent of insurance a written appointment of the superintendent to be the true and lawful attorney of such corporation in and for this state, upon whom all lawful process in any action or proceeding against such corporation might be served with the same force and effect as if it were a domestic corporation, and that service upon such attorney should be deemed service upon the corporation. The appointment made under these provisions was not the designation provided for, however, by subdivision 2, § 432, Code Civ. Proc. The appointment made under these acts was to be filed in the office of the superintendent of insurance, and related alone to foreign insurance corporations; while the designation under this section of the Code was to be filed in the office of the secretary of state, and related to all foreign corporations, whether insurance or otherwise. The provisions of section 432 of the Code of Civil Procedure were enacted long before either the statute of 1884 or that of 1892. These provisions of the Code have never been expressly repealed, and are still in force. The provisions of the acts of 1884 and 1892 in no manner conflict with the provisions of the Code. The acts of 1884 and 1892 provided for the service of process upon a person other than those specified in the provisions of the Code, where the foreign corporation was an insurance company. The acts of 1884 and 1892 provided merely that process might be served upon the superintendent of insurance, not that it must be. A proper service might, therefore, be made upon a foreign insurance corporation under the provisions either of the Code or of the act of 1884 or 1892. Concededly, there was no attempt here to serve under the provisions of the act of 1884 or of 1892.

The only question, therefore, is whether the defendant made proof of such facts at special term as called upon the court to hold that there was not good service under the provisions of the Code. It appeared that the service was made by delivering the summons and complaint to Blackwell. There was no proof or claim that any des-

ignation had been made under the provisions of the Code. The difficulty with the proof that was made at special term was that it did not show that Blackwell was not the person referred to in either the first or third subdivision of section 432. All that the proof showed was that he was a special agent for defendant, and that his duty was to act for defendant in receiving proofs of loss and in adjusting losses. It did not show that he had no other relations with the defendant. For all that appeared, he might have been the president or secretary of defendant. There was no proof that the defendant did not lack either of these officers, and that Blackwell was not then an officer performing corresponding functions. If he was either of these persons, the service was good under the first subdivision of the section. There was no proof that a designation under subdivision 2 of the section had been made or was in force, nor was there any proof that the defendant had no property within this state, nor that the cause of action did not arise in this state; and, in the absence of this proof, the service, if made upon the cashier, a director, or a managing agent of the defendant, was good under the third subdivision of the section; and then there was no proof that Blackwell was not either the cashier, a director, or a managing agent of the defendant. The defendant could not have an order setting aside the summons and complaint unless he proved that the service made was not such as the law provided for to give the court jurisdiction of the action. No such proof was given, for the reasons stated. Such proof was at hand if it could be made at all. Blackwell was the agent for defendant, located in the state. His affidavit could have been presented showing what his entire relations with the defendant were. Only the attorney's affidavit was produced, and it might well be true that he had no knowledge as to Blackwell's relations with the defendant, or whether they were anything more than that of a special agent with the duty to receive proofs of loss and to adjust losses or not. We do not deem it necessary to pass upon the question whether, if Blackwell's only relations with the defendants were to act for it in receiving proofs of loss and adjusting losses, he was a managing agent under the provisions of section 432 of the Code. There was no proof before the special term that these were his only relations with defendant, no proof that his relations were not such as clearly and beyond all question constituted him a managing agent.

We think the order was properly made by the special term, and that it should be affirmed, with costs. All concur.