FEBRUARY TERM, 1905.    · 397

3 *Robbins.*    Groel *v.* United Electric Company of New Jersey.

---

ADAM H. GROEL

*v.*

UNITED ELECTRIC COMPANY OF NEW JERSEY et al.

[Decided April 18th, 1905.]

1. A defendant may take advantage of insufficient service of process in a suit in chancery by a plea to the jurisdiction reciting a special appearance, following *Wilson* v. *American Palace Car Co., 65 N. J. Eq. (20 Dick.) 730.*

2. For a cause of action arising in this state, while a foreign corporation was transacting business here under a license obtained under the statute, chancery can enforce its jurisdiction by process served on the designated agent, whether the corporation is actually engaged in business

here at the time of service or not, and such construction of the statute is not violative of the fourteenth amendment of the federal constitution, in relation to due process of law.

3. Though the business out of which a cause of action against a foreign corporation arose within the state. was not within that specified in the application filed by it, it can be reached by process served on its designated agent.

4. Where a foreign corporation came into the State of New Jersey and organized and controlled a corporation, causing it to issue its bonds and stock, and took them and purchased stocks held in various New Jersey corporations, and also took from such stockholders sums of money as further consideration, and gave a guarantee that another corporation would pay the interest on its bonds, such transactions amount to a doing of business.

5. Upon a hearing upon bill and plea raising a question of jurisdiction, the merits may not be gone into further than is necessary to determine the question of jurisdiction.

6. Service of process on a designated agent of a foreign corporation is good, although previously the corporation, by resolution, had formally revoked the designation and sent a copy to the secretary of state, who had placed the same with the files of the company and made an entry on his docket of foreign corporations to the effect that the corporation had withdrawn from the state, there having been no designation of another agent.

Heard on bill and plea.

The issue is raised upon a plea to the jurisdiction of the court.

The complainant, a resident of New Jersey, filed his bill against the United Electric Company of New Jersey and the United Gas Improvement Company, a corporation of the State of Pennsylvania.

He is a stockholder of the United Electric Company of New Jersey, and the suit is brought by him in virtue of that fact, his allegation being that the company should have brought this suit but would not.

The bill charges that the United Electric Company of New Jersey was incorporated on the 4th of March, 1899, with an authorized capital stock of $20,000,000, divided into two hundred thousand shares of $100 each.

That said corporation was organized and promoted by and at the instance of the United Gas Improvement Company, its

incorporators being the mere agents and representatives of the United Gas Improvement Company, and that said incorporators paid in $4,500 for fifteen shares of the capital stock, which money was furnished by the United Gas Improvement Company.

That simultaneously with the incorporation of the United Electric Company of New Jersey the United Gas Improvement Company, through the Fidelity Trust Company of New Jersey, its agent, offered to the holders of the capital stock of a large number of corporations incorporated under the laws of New Jersey to purchase or acquire from them their stock in said various companies in exchange for bonds of the United Electric Company of New Jersey.

That this offer was made to the stockholders of the Peoples Light and Power Company, the Consumers' Light, Heat and Power Company, the North Hudson Light, Heat and Power Company, the Morris County Electric Company and to the stockholders of many other companies, the names of which companies are not given.

That complainant was a stockholder of the Peoples Light and Power Company.

That to the stockholders of that company the offer of the United Gas Improvement Company, through the Fidelity Trust Company, was to pay to them, for each $1,000 of their stock in the Peoples Company, $1,750 in bonds of the United Electric Company of New Jersey, out of a total issue of $20,000,000 of said bonds, provided said stockholders would, in addition to the surrender of their stock, pay the sum of $200 in cash.

The United Gas Improvement Company agreed to guarantee the payment of the interest on the bonds of the United Electric Company of New Jersey for a period of five years and to turn into the treasury of the United Electric Company the cash above referred to.

It was further stated in said offer that the United Gas Improvement Company owned the control of the stock of the United Electric Company of New Jersey, and that it agreed to sell to those stockholders of the Peoples Light and Power Company, who availed themselves of the said offer, stock in the United Electric Company of New Jersey to the amount of

twenty-five per cent. at par of their holdings of stock in the Peoples Light and Power Company, to be paid for by such stockholders at the rate of $30 per share, the par value of each share being $100.

That the offer aforesaid was accepted by substantially all of the holders of the capital stock of the companies named above, and that such stockholders deposited their stock certificates with the Fidelity Trust Company and paid the sums of money required by the offer to be paid by them, and that many of such stockholders availed themselves of the offer to purchase the shares of the capital stock of the United Electric Company and paid to the Fidelity Trust Company the sums required by them for such purchase, and received from the United Gas Improvement Company, through the Fidelity Trust Company, the shares of stock of the United Electric Company and the bonds in accordance with said offer and acceptance.

That the United Gas Improvement Company kept for itself the entire capital stock of the United Electric Company of New Jersey over and above the amount sold to the stockholders of the subsidiary companies as above described.

That this secret profit of the United Gas Improvement Company was obtained without disclosing to the stockholders of the subsidiary companies the facts, and that it was in fraud of the rights of the United Electric Company and its stockholders, including the complainant, who had accepted the offer of the United Gas Improvement Company and obtained stock and bonds of the United Electric Company in accordance therewith.

That the complainant was unaware of the facts until shortly before filing this bill, and on the 11th of August, 1903, he addressed and delivered to the president and directors of the United Electric Company of New Jersey a letter setting forth the facts and requesting that company to bring an action for the recovery of the unlawful and secret profits made by the United Gas Improvement Company, and that said United Electric Company of New Jersey refused to bring said suit.

After praying for discovery of various matters, the complainant asks that the amount of the secret profits made by the United Gas Improvement Company may be ascertained, and

may be decreed to be paid to the United Electric Company, and that the amount of damage suffered by the United Electric Company, by reason of the fraudulent acts and transactions of the United Gas Improvement Company, may be ascertained and may be decreed to be paid to the United Electric Company, and for further relief.

To this bill the defendant the United Gas Improvement Company filed the following plea :

"The defendant the United Gas Improvement Company, appearing by its officers for the sole purpose of objecting to the jurisdiction of this honorable court over this defendant in this action, and for no other purpose, and by protestation, not confessing or acknowledging the matters and things in and by the said bill of complaint of the said Adam H. Groel, set forth in such manner and form as the same are thereby and therein set forth and alleged for plea to the jurisdiction of this honorable court in the premises, says that the said The United Gas Improvement Company is not a resident or citizen of the State of New Jersey, or existing as a body corporate under and by virtue of its laws ; that it has no office, agent or agency, or place of business within the State of New Jersey, nor has it had any office, agent or agency or place of business therein since the first day of November, eighteen hundred and ninety-nine ; that it is a body corporate existing under and by virtue of the laws of the State of Pennsylvania ; that on the tenth day of July, eighteen hundred and ninety-four, it filed in the department of state of the State of New Jersey a copy of its charter or certificate of organization, duly attested by its vice-president and secretary under its corporate seal, and a statement of the same officers, also under its corporate seal, setting forth the total amount of capital stock it was authorized to issue, the character of the business in which it was engaged and in which it proposed to engage within this state, and naming R. W. Elliott, then a citizen of this state, as its agent upon whom legal process against it might be served, the said R. W. Elliott having an office or place of business, at that time, at No. 109 Montgomery street, Jersey City, which was also the office and principal place of business within this state of said The United Gas Improvement Company, a copy of which statement is hereto annexed and made a part hereof as *Exhibit A;* that upon the filing of said papers the secretary of state of the State of New Jersey issued to said The United Gas Improvement Company a certificate that it had complied with all the requirements of law to authorize it to transact business in this state, and that the business of the United Gas Improvement Company to be carried on within this state was such as might lawfully be carried on by corporations incorporated under the laws of New Jersey for similar business; that the United Gas Improvement Company continued its business of manufacturing and selling gas in the State of New Jersey, at its principal office or place of business in New Jersey, at No. 109 Montgomery street, Jersey City, until November 1st,

1899, at which time it discontinued the same and has not since resumed it; that it then discharged all obligations of any and every kind whatsoever arising out of or connected with said business, closed its said office or place of business and discharged said R. W. Elliott from its said agency and employ, and since that date has had no office, agent or place of busi· ness in the State of New Jersey, nor has it conducted business therein; that on the ninth day of September, nineteen hundred and three, the board of directors of the United Gas Improvement Company, at a regular meeting of said board held at its principal office in the city of Phila- delphia, at which there was a quorum present, passed a resolution form- ally revoking, in writing, the designation of said R. W. Elliott as its agent, and directing that a certified copy of said resolution be forthwith served upon said R. W. Elliott, and that another copy thereof, under the seal of the corporation, duly certified and attested, be forthwith filed in the office of the secretary of state of the State of New Jersey, a copy of which resolution is hereto annexed and made a part hereof as *Exhibit B;* that a copy of said resolution was forthwith sent by registered letter to the said R. W. Elliott, directed to him at his post-office address in East Orange, in the State of New Jersey, and was received and receipted for by him on the eleventh day of September, nineteen hundred and three, and that another copy thereof, under the seal of the said The United Gas Im- provement Company, duly certified by Thomas Dolon, president of said company, and attested by James Ball, assistant secretary thereof, was on said tenth day of September, nineteen hundred and three, delivered to Honorable Samuel D. Dickinson, secretary of state of the State of New Jersey, at his office in the state house in the city of Trenton, in said State of New Jersey, and was thereupon placed by him with the other files of papers of said The United Gas Improvement Company in the office of the secretary of state of the State of New Jersey, and an entry made by him in red ink on his docket of foreign corporations, opposite the name of the United Gas Improvement Company and the name of R. W. Elliott as agent thereof, to the effect that the United Gas Improvement Company had withdrawn from the state; that jurisdiction has been sought to be obtained over the United Gas Improvement Company in this case by the issuance of a writ of *subpœna ad respondendum* out of and under the seal of this honorable court, bearing date October 15th, 1903, directed to 'United Gas Improvement Company, a corporation,' and the service of the same by the sheriff of the county of Essex upon the said Robert W. Elliott at his place of residence in East Orange, in the county of Essex, on the sixteenth day of October, nineteen hundred and three, and by a return thereof by said sheriff of the county of Essex, as follows: 'Served the within writ upon the within named defendant company by delivering a true copy thereof personally to Robert W. Elliott, statutory agent of the said company, October 16th, 1903. William C. Nicoll, sheriff, by Fred. Weimer, special deputy;' that no process or other legal notice has been otherwise served upon the United Gas Improvement Company or upon any persons authorized on its behalf in the matter of this suit; that at the time of said service said Robert W. Elliott was not statutory agent or other representative or agent of the United Gas Improvement Company in the State of New Jersey or elsewhere, and had no connection

whatever as officer, director or otherwise with the United Gas Improvement Company, and that no decree can be entered in this suit which is enforceable against this defendant under the constitution and laws of the United States or under the constitution and laws of the State of New Jersey.

"By reason thereof this defendant humbly submits that this honorable court has not now, and never had, and cannot have, jurisdiction over it.

"All which matters and things this defendant doth aver to be true, and pleads the same in bar to the said complainant's bill and to the jurisdiction of this honorable court in the premises, and prays the judgment of this honorable court whether it should be compelled to make any further or other answer to said bill, and prays to be hence dismissed, with its costs and charges in this behalf sustained."

*Mr. Edwin G. Adams* (with whom was *Mr. Nathan Bijur,* of the New York bar), for the complainant.

*Mr. Robert H. McCarter* and *Mr. Richard V. Lindabury,* for the United Gas Improvement Company.

GARRISON, V. C.

The complainant raises an initial objection to the plea which requires consideration before the substance of the plea is dealt with.

It will be observed that the defendant recites in the commencement of its plea that it appears solely for the purpose of questioning the jurisdiction of the court and for no other purpose.

The complainant insists that since the court of chancery of New Jersey has undoubted jurisdiction of the subject-matter, and since one of the defendants, to wit, the United Electric Company, is within reach of the process of the court, and the sole ground on which the pleading defendant disputes the jurisdiction of the court is that it has not been properly served with process, it is not proper practice to raise such an issue by a plea to the jurisdiction of the court reciting a special appearance.

It is suggested that the proper practice is to move to set aside the service of the process after having obtained leave of the court to enter a conditional appearance, the condition of the appearance being that if the court overrules the motion the defendant will submit itself generally.

It is pointed out that if the practice adopted in this case is permitted a defendant may, by appearing specially, invoke the jurisdiction of our court without being in any way bound by its decision.

A defendant permitted to thus come into court specially may raise an issue and be heard upon it, and, if the decision be in his favor, take advantage of it, without, on the other hand, being at all prejudiced if the decision be against him.

The supreme court of the United States has held that if a defendant is permitted to appear specially to dispute the jurisdiction of the court over his person, he may go on and litigate upon the merits without being held to have appeared generally in the suit. *Harkness* v. *Hyde, 98 U. S. 476; 25 L. Ed. 237.*

But it has also held that if he appears in the face of a warning or condition that his appearance will be construed to be a general appearance, he will be bound thereby. *York* v. *Texas, 137 U. S. 15; 34 L. Ed. 604; Kauffman* v. *Wooters, 138 U. S. 285; 34 L. Ed. 962.*

It will therefore be perceived that this matter is of much graver concern than a mere question of practice.

The pertinent inquiry being whether the status of the defendant in the suit should not, for his protection as well as that of the other party and the court, be fixed when the defendant first takes part in the proceeding?

There may be exact justice in permitting a defendant to appear specially to litigate the question as to whether he has been brought within the jurisdiction of the court, and in permitting him to claim protection against the inference that his appearance for that purpose was a general appearance conferring jurisdiction. But is it not equally just to require him to elect whether to stand on that position or to abandon it?

It seems reasonable to hold that if he disputes the right of the court to enforce any jurisdiction over him, he may come in specially and litigate that question, but that when that question is determined, if the decision be against him, he must elect either to stand on his asserted immunity from jurisdiction or abandon it and litigate on the merits. He must not attempt to do both and thus be half in and half out of court. *Eddy* v.

*Lafayette,* 49 *Fed. Rep.* 807; *Crawford* v. *Foster,* 84 *Fed. Rep.* 939; *Tower* v. *Moore,* 52 *Mo.* 118; *Davies* v. *Andre,* 24 *Q. B. D.* 606.

The complainant sought to have this plea stricken out or taken from the files—if that be, as I apprehend it is, the proper practice—upon the ground that the defendant had no right to insert in the plea the special appearance with which it commences.

This motion was made under Chancery rule 213, and was denied. *Groel* v. *United Electric Co. of New Jersey,* 68 *N. J. Eq.* 249 (*Vice-Chancellor Emery, 1904*).

The complainant upon the present hearing renews its objection to this part of the plea, and claims that the court, upon a hearing upon bill and plea, will adjudge the plea insufficient and strike it out as well for matters of form as for matters of substance.

From what is said by the court in the cases of *Davison's Executors* v. *Johnson,* 16 *N. J. Eq.* (1 *C. E. Gr.*) 112 (*Chancellor Green, 1863*), and *Corlies* v. *Corlies' Executors,* 23 *N. J. Eq.* (8 *C. E. Gr.*) 197 (*Chancellor Zabriskie, 1872*), there is some warrant for this contention.

From such investigation as I have made of the practice in the English court of chancery, which is applicable to our practice, excepting where changed, I incline to the opinion that a motion based upon a conditional appearance, and not a plea to the jurisdiction of the court, was the settled practice in such a case as the present.

A plea to the jurisdiction commenced, as did all other pleas, by what we would construe as a general appearance, because it asserted that which showed lack of jurisdiction of the subject-matter, and this, of course, could not be cured by appearance.

Daniells points out (as does Story) that in equity pleas to the jurisdiction simply assert that the court of chancery is not the proper court to take cognizance of the rights sought to be enforced by the complainant, and that pleas to the person assert that the complainant is incapacitated to sue or that the defendant is not the person who ought to be sued. 1 *Dan. Ch. Pl. &*

*Pr.* (6th Am. ed.) 621, *627; Story Eq. Pl. (Redf. ed.) 589, 595, 601.

Under the first head of such pleas, namely, that the court of chancery is not the proper court to take cognizance of the case, the fact that the defendant, for some reason, was solely suable in some other court was the proper subject-matter of the plea, and for this reason the defendant was required always to set out the other court which he contended had exclusive jurisdiction.

With us this is largely, if not wholly, inapplicable, because a citizen or corporation is not the subject of exclusive jurisdiction, but, generally speaking, is suable where found.

It is, however, necessary, in studying the American cases, to constantly bear in mind the distinction between cases in the state courts and those in the United States courts—in the latter courts citizenship being a jurisdictional fact, very often is determinative of the issue as to whether the court has jurisdiction of the subject-matter. *Funck* v. *Smith, 46 N. J. Law (17 Vr.) 484 (Supreme Court, 1884).*

I failed to find any reference in the works on equity pleading to any practice prevailing in the English court of chancery at the time of which we are speaking, permitting a defendant to file a plea to the jurisdiction of the court based upon an allegation that he had not properly been served with process in a case in which the court would have undoubted jurisdiction if he were served with process.

Cases in which such a plea was entertained are explained by the remark of the court in *Drummond* v. *Drummond, 36 L. J. Ch. 153; L. R. 2 Ch. App. 32; 15 L. T. Rep. 337,* that "much confusion has arisen by treating want of power to enforce jurisdiction as tantamount to want of jurisdiction."

In a case in the federal court, in which all of the authorities are considered, and many of them cited, the court reaches the conclusion that, "The objection that the defendants to a bill in equity have not been effectively served with process to bring them within the presence of the court for judgment, is not, as at law, one of jurisdiction to be pleaded by a formal plea to the writ, but one of mere irregularity of process, properly cognizable on motion, according to a practice always prevailing for

that especial purpose." *Romaine* v. *Union Insurance Co., 28 Fed. Rep. 625* (at *p. 628*).

Daniells points out the practice and the precedents. *1 Dan. Ch. Pl. & Pr. (6th Am. ed.) 452, *453.*

It is not useful to further consider this matter if it be true, as I am inclined to think it is, that the practice in New Jersey has been settled by a decision of the court of errors and appeals.

In the case of *Wilson* v. *American Palace Car Co., 65 N. J. Eq. (20 Dick.) 730 (Court of Errors and Appeals, 1903)*, a plea to the jurisdiction of the court of chancery was sustained.

The plea was based upon the allegation that the defendants were non-residents of New Jersey, and that they had been served out of the jurisdiction with orders of publication made in that suit.

Unless there is some distinction between a plea based upon the allegation of the service out of the jurisdiction of an order of publication and a case like the present one, of the service within the jurisdiction of a subpœna upon one, alleged by the complainant and denied by the defendant to be the agent of the defendant, the cited case must control the present one.

I am unable to see any distinction.

It is true that the question as to whether the objection should be by plea or motion does not appear to have been raised in the *Wilson Case,* and it may be that the court of errors and appeals, upon consideration, will settle our practice in accordance with the ancient English practice, but I feel constrained to follow the clear precedent now existing, and will therefore entertain the plea in its present form.

The language which is objected to in the plea in the present case is identical with the commencement of the plea in the *Wilson Case.* In each there is the recital of a special appearance.

This, then, brings us to a consideration of the substance of the plea.

It needs no citation of authority to establish the principle that in a hearing upon a bill and plea the court takes the uncontradicted parts of the bill and the allegations of the plea as verities, and decides according to the right upon the case thus presented.

The complainant insists that he has brought the defendant into court by service of process upon R. W. Elliott, its agent, designated as such by it in accordance with the provisions of our law.

The defendant company was licensed to do business in New Jersey on the 10th day of July, 1894.

The statute then existing was chapter 228 of the laws of 1894. *P. L. p. 346.*

The material parts of the act are:

Section 1. That no foreign corporation shall transact business in this state until it shall have filed in the department of state copies of certain papers and a statement setting forth, among other things, "the character of business in which it is engaged and in which it proposes to engage in this state," and also "a citizen or corporation of this state as its agent, upon whom legal process against such foreign corporation may be served."

It further provides that

"the agency so designated shall continue in force until revoked in writing, and some other citizen or New Jersey corporation shall be substituted therefor; if the citizen so designated dies or removes his office, or such New Jersey corporation becomes disqualified, and such foreign corporation does not, within thirty days after such death, removal or disqualification, designate in like manner another citizen or New Jersey corporation upon whom process against it may be served within this state, the secretary of state shall revoke the authority of such corporation to do business within this state, and process against such corporation in actions upon any liability incurred within this state before such revocation may, after such death, removal or disqualification, and before any other designation shall have been made, be served upon the secretary of state."

The second section provides

"that upon filing the papers hereinbefore designated the secretary of state shall issue to the said foreign corporation a certificate that (it) has complied with all the requirements of law to authorize it to transact business in this state, and that the business of such corporation to be carried on within this state is such as may be lawfully carried on by corporations incorporated under the laws of New Jersey for similar business."

This act was amended by chapter 138 of the laws of 1895 (*P. L. p. 293*), but not in the parts material to this inquiry.

The previous acts are incorporated in the revision of 1896 (*P. L. p. 307*), in paragraphs 97, 98 and 99.

The only changes in the parts of the act with which we are dealing are in section 97, requiring that the foreign corporation shall make and file a statement

"designating its principal office in this state and an agent, who shall be a domestic corporation or a natural person of full age actually resident in this state, together with his place of abode, upon which agent process against such corporation may be served, and the agency so constituted shall continue until the substitution, by writing, of another agent."

And in section 99, providing:

"If said agent shall die, remove from the state or become disqualified, such corporation shall forthwith file in the office of the secretary of state a written appointment of another agent, attested in the manner above provided, and in case of the omission to do so within thirty days after such death, removal or disqualification, then the secretary of state, upon being satisfied that such omission has continued for thirty days, shall, by entry on the record thereof, revoke the certificate of authority to transact business within this state, and process against such corporation in actions upon any liability incurred within this state before the designation of another agent may, after such revocation, be served upon the secretary of state; at the time of such service the plaintiff shall pay to the secretary of state, for the use of the state, two dollars, to be included in the taxable costs of such plaintiff, and the secretary of state shall forthwith mail a copy of such process to such corporation at its general office, or to the address of some officer thereof, if known to him."

It has been held that statutes of this nature do not, when acted upon by foreign corporations, constitute a contract between the state and such foreign corporation which is impaired by subsequent legislation.

They serve to create what may be termed a status. *Connecticut Mutual Insurance Co.* v. *Spralley, 99 Tenn. 322; 44 L. R. A. 442; Connecticut Mutual Life Insurance Co.* v. *Spratley, 172 U. S. 602; 43 L. Ed. 569.*

The defendant disputes the binding effect upon it of the service upon Elliott for reasons which may be thus summarized:

I. That jurisdiction over a foreign corporation may only be enforced by the courts of New Jersey when service is made upon an officer or agent specified by law at a time when the corporation is actually engaged in business in New Jersey.

II. That if the court construes the statutes to mean that a foreign corporation is suable here for a cause of action arising here by service upon its designated agent after it has ceased the actual transaction of business here, then such statutes contravene the fourteenth amendment of the constitution of the United States, and are invalid.

III. That if it be held that the statutes of New Jersey authorize service upon a designated agent of a foreign corporation after the corporation has ceased to do business here, the cause of action must be one which arose out of the business which the company specified, in its application, that it intended to carry on in this state, and that the cause of action in this case was not such.

IV. That assuming that the defendant was subject to be sued in New Jersey by process served upon its designated agent, Elliott, up to the 10th day of September, 1903, it was not so suable thereafter, because on that date it revoked the agency of Elliott.

I.

The artificial being termed a corporation is, in this country, largely, if not solely, the creature of statute.

Since the laws enacted by any given sovereignty have no extraterritorial effect, one of the first questions that had to be considered by our courts was whether a corporation of one state could make a contract in another state and enforce the same.

It was held that it could. *Bank of Augusta* v. *Earle, 13 Pet. 519 (U. S. Supreme Court, 1839)* ; *10 L. Ed. 274.*

In the decision of that case, Chief-Justice Taney said: "It is very true that a corporation can have no legal existence out of the boundaries of the sovereignty by which it is created. It exists only in contemplation of law and by force of the law, and where that law ceases to operate and is no longer obligatory, the corporation can have no existence. It must dwell in the place of its creation and cannot migrate to another sovereignty."

This theory was the basis of the decision of the cases which held that a corporation could not be sued outside of the jurisdiction of the sovereignty which had created the corporation.

*Peckham .v. North Parish, 16 Pick. 286; Desper* v. *Continental Water Meter Co., 137 Mass. 252; Lalimer* v. *Union Pacific Railway Co., 43 Mo. 105; 97 Am. Dec. 378; McQueen* v. *Middletown Manufacturing Co., 16 Johns. 5; Barnett* v. *Chicago and Lake Huron Railroad Co., 4 Hun 114; Hulbert* v. *Hope Insurance Co., 4 How. Pr. 275.*

It was inevitable, of course, that the unfairness and one-sidedness of the law thus interpreted should be seen and remedied.

To hold that a corporation might by comity be admitted within other sovereignties, and might therein make contracts and transact business, and that those in such other sovereignties with whom it contracted and did business must seek it at its home jurisdiction, was to create an unreasonable and unjust preference in favor of the artificial being.

"This doctrine of the exemption of a corporation from suit in a state other than that of its creation was the cause of much inconvenience and often of manifest injustice. The great increase in the number of corporations of late years, and the immense extent of their business, only made this inconvenience and injustice more frequent and marked. Corporations now enter into all the industries of the country. * * * Incorporated under the laws of one state, they carry on the most extensive operations in other states." *St. Clair* v. *Cox, 106 U. S. 350; 27 L. Ed. 222 (1882).*

The remedy was applied by holding that when a foreign corporation came within the boundaries of a sovereignty other than that of its creation, and there made contracts and transacted business, it was answerable there for causes of action there arising, provided service was made there upon some actual representative of the foreign corporation.

The courts recognized that the artificial being, like a human being, might and did migrate, and by so doing might and did subject itself to the jurisdiction of the courts where it was found.

"Whilst the theoretical and legal view that the domicile of a corporation is only in the state where it is created was admitted, it was perceived that when a foreign corporation sent its officers and agents into other states, and opened offices and carried on

its business there, it was in effect as much represented by them there as in the state of its creation. As it was protected by the laws of those states, allowed to carry on its business within their borders and to sue in their courts, it seemed only right that it should be held responsible in those courts to obligations and liabilities there incurred." *St. Clair* v. *Cox, supra.*

This jurisdiction, it was held, could be enforced over foreign corporations wherever service could be obtained upon them in accordance with the law of the particular jurisdiction.

It being entirely within the powers of each state to exclude foreign corporations, or to admit them within its borders upon conditions, each state has the right to prescribe a mode of service of process upon foreign corporations which will subject them to the jurisdiction of its courts, provided, of course, that such mode is not unreasonable or contrary to the principles of natural justice. *Lafayette Insurance Co.* v. *French, 18 How. 404; 15 L. Ed. 451; Baltimore and Ohio Railway Co.* v. *Harris, 12 Wall. 65; 20 L. Ed. 354; Ex parte Schollenberger, 96 U. S. 369; 24 L. Ed. 853; St. Clair* v. *Cox, 106 U. S. 350; 27 L. Ed. 222; In re Louisville Underwriters, 134 U. S. 488; 33 L. Ed. 991; Societe Fonciere et Agricole Des Etats Unis* v. *Milliken, 135 U. S. 304; 34 L. Ed. 208; Wilson* v. *Seligman, 144 U. S. 41; 36 L. Ed. 338; New York, Lake Erie and Western Railway Co.* v. *Estill, 147 U. S. 591; 37 L. Ed. 292; In re Hohorst, 150 U. S. 653; 37 L. Ed. 1211; Hooper* v. *State of California, 155 U. S. 648; 39 L. Ed. 297.*

The State of New Jersey made provision for service upon foreign corporations by the act of 1865. *P. L. p. 467.*

The effect of the decisions and the statutes was not to enlarge the jurisdiction of the court, but to provide a method for enforcing its jurisdiction.

When the artificial being came within the state and transacted business it brought itself within the jurisdiction of the courts of the state, but until a method was provided for bringing the foreign corporation before the court, the jurisdiction of the court could not be enforced.

When such method was provided it did not serve to give the court any jurisdiction that it did not have before, but merely

enable it to enforce that which it had. *Camden Rolling Mill Co.* v. *Swede Iron Co., 32 N. J. Law (3 Vr.) 15 (Supreme Court, 1866).*

There were always, therefore, two questions to be decided before the merits of any such controversy could be reached for determination: First, was the artificial being within the state, transacting business—*i. e.,* was it "found" therein? Second, was the process served upon an actual representative of the corporation in accordance with the provisions of the law of that jurisdiction?

It will be perceived that the situation thus created was susceptible of great abuse. · Foreign corporations came into states, transacted business therein, incurred obligations, and before process was served upon them withdrew from the state, leaving unsatisfied obligations. The citizens of such state, in whose favor causes of action against the foreign corporation existed, were obliged to seek the latter at its home jurisdiction, however inconvenient and unjust this might be.

Our supreme court held that if a corporation went into another state and transacted business, and afterwards withdrew therefrom and ceased to transact business in that state, the jurisdiction of the courts of that state over such corporation, upon a cause of action arising within that state, was enforceable by process served upon its officers within that state. *Moulin* v. *Trenton Insurance Co., 25 N. J. Law (1 Dutch.) 57 (Supreme Court, 1855);* followed in *National Condensed Milk Co.* v. *Brandenburgh, 40 N. J. Law (11 Vr.) 111 (Supreme Court, 1878).*

These cases went further than do the decisions of the supreme court of the United States. In the absence of a designation of an agent, the decisions of the latter limit the right to serve the officers to cases in which the corporation is actually engaged in business within the state at the time of service of process.

Assuming, however, that the principle of the *Moulin Case* would be applied inflexibly, the situation was still one of great difficulty for the citizens of the state who had dealings within the state with foreign corporations.

To enforce the jurisdiction of our courts over such foreign corporations it would be necessary to serve process upon some actual representative of the corporation within the state.

There was almost always a contest over the character of the representative who was served.

The existing conditions, therefore, called for legislative action.

Cases have already been cited holding the absolute power of the state to enact legislation prescribing the conditions upon which foreign corporations may come within its borders and transact business, and in the exercise of such power the State of New Jersey passed the acts, beginning in 1894, which have heretofore been cited and largely quoted.

The purpose of this legislation is perfectly clear. I do not think, in any proper use of the word, it may be said that the acts call for construction.

Foreign corporations, before the enactment of this legislation, could, as we have seen, come within the State of New Jersey and, unless service had been made upon some actual representative thereof while the corporation was actually doing business in the state, they were free to withdraw from the state and cause citizens who had transacted business with them here to pursue them to their home jurisdictions at great inconvenience and expense, the result being, as was said in *Baltimore and Ohio Railway Co.* v. *Harris, supra,* to give foreign corporations, "to a large extent, immunity from all legal responsibility."

Even the application of the principle of the *Moulin Case* would have afforded only partial relief. Under it the corporation could be made amenable to the jurisdiction of our courts by service of process if some head officer or actual representative were caught within the state after the corporation had withdrawn from the state. But this was too precarious a remedy to be effectual, and, beside, was not in accord with the decisions of the supreme court of the United States.

The act of 1894, therefore, was enacted to remedy this obvious evil. By its provisions foreign corporations could not lawfully transact business in this state without designating an agent upon whom process might be served.

Upon coming within the state and complying with the law, foreign corporations were highly favored. They were permitted to transact any business which a similar corporation in New Jersey could transact, and our Corporation act was made applicable to such foreign corporation to the extent to which it could be applied.

On the other hand, I do not think it can be questioned that under this act a foreign corporation which has come within the state, made application and received license, is subject to have the jurisdiction of our courts enforced against it, by service of process upon its designated agent, for any cause of action arising within this state.

The argument of the defendant, that the act of 1894 was merely intended to provide a fixed, specified, designated person to be served, instead of the class enumerated in the act of 1865, is, in my view, without foundation to support it, and is directly in the face of the history of the subject-matter and of the decisions and legislation with respect thereto.

The courts, in cases where similar statutory conditions existed, have held that the two statutes co-exist and that one is not exclusive of the other. *Howard* v. *Prudential Insurance Co., 1 App. Div. 135; 37 N. Y. Supp. 832; Silver* v. *Western Assurance Co., 3 App. Div. 572; 38 N. Y. Supp. 335; Green* v. *Equitable Mutual Life and Endowment Association, 105 Iowa 628; 75 N. W. Rep. 635; Mutual Reserve Fund Life Association* v. *Cleveland Woolen Mills, 27 C. C. A. 212; 54 U. S. App. 290; 82 Fed. Rep. 508; Connecticut Mutual Life Insurance Co.* v. *Spratley, 99 Tenn. 322; 44 L. R. A. 442; 42 S. W. Rep. 145; affirmed, 172 U. S. 602; 43 L. Ed. 569; 19 Sup. Ct. Rep. 308; Henrietta Mining and Milling Co.* v. *Johnson, 173 U. S. 221; 43 L. Ed. 675.*

The defendant seeks to impugn the validity of the act of 1894 because its language is so broad that under it a citizen of another state could come here, after the foreign corporation had ceased to do business here, and could sue such foreign corporation here upon a cause of action arising elsewhere, and serve its designated agent.

I do not think that this argument has any weight in determining the question now under consideration.

Such a juncture as would arise, if the facts were as stated in the supposititious case, would call for a construction of the act.

It might then be necessary to restrict its application within limits narrower than its language.

It may be that our courts would not have jurisdiction over a foreign corporation, after it had ceased to do business in this state, upon a cause of action arising elsewhere, and therefore could not, of course, enforce jurisdiction by service of process upon the designated agent of the foreign corporation.

But this does not lessen in any way the right found to exist in our courts under this act to enforce jurisdiction over a foreign corporation upon a cause of action arising within this state by service of process upon its designated agent herein.

If the language of the act is, as it admittedly is, broad enough to cover the case in hand, the fact that it is still broader cannot unfavorably affect the case that is within its terms.

I therefore conclude that the statute applies to the case at bar, and that, for this cause of action, which arose in New Jersey while the defendant corporation was transacting business here under a license obtained under the statute, the court can enforce its jurisdiction by process served upon the designated agent of the defendant corporation, whether the corporation is actually engaged in business here at the time of service or not.

## II.

The defendant contends that the construction of the act just announced makes the same invalid and unenforceable, because it is in conflict with the fourteenth amendment of the constitution of the United States.

Its contention is that, by ceasing to do business in the State of New Jersey, the defendant corporation cannot be sued therein, and that the fourteenth amendment, as interpreted in *Pennoyer* v. *Neff, 95 U. S. 714; 24 L. Ed. 565,* prohibits such a statute providing for service of process, because it is not *due process of law.*

There is little use in the determination of this question in considéring other decisions than those of the supreme court of the United States. That tribunal is the only arbiter as to what is within the phrase "due process of law."

In *Pennoyer* v. *Neff* those words were defined to mean "a course of legal proceedings according to those rules and principles which have been established in our system of jurisprudence for the protection and enforcement of private rights. To give such proceedings any validity there must be a tribunal competent by its constitution—that is, by the law of its creation —to pass upon the subject-matter of the suit; and, if that involves merely a determination of the personal liability of the defendant, he must be brought within its jurisdiction by service of process within the state, or by a voluntary appearance."

And in that same case the court, to prevent its decision being misunderstood or misapplied, uses the following language :

"Neither do we mean to assert that a state may not require a non-resident entering into a partnership or association within its limits, or making contracts enforceable there, to appoint an agent or representative in the state to receive service of process and notice in legal proceedings instituted with respect to such partnership, association or contracts, or to designate a place where such service may be made and notice given, and provide, upon their failure to make such appointment or to designate such a place, that service may be made upon a public officer designated for that purpose, or in some other prescribed way, and that judgments rendered upon such service may not be binding upon the non-residents both within and without the state. As was said by the court of exchequer, in *Vallee* v. *Dumergue, 4 Exch. 290,* 'It is not contrary to natural justice that a man who has agreed to receive a particular mode of notification of legal proceedings should be bound by a judgment in which that particular mode of notification has been followed, even though he may not have actual notice of them.' See, also, *Insurance Company* v. *French, 59 U. S. 404;* *15 L. Ed. 451;* and *Gillespie* v. *Insurance Company, 12 Gray 201."*

The doctrine in the case of *Lafayette Insurance Co.* v. *French, supra,* was that natural justice required that no person should

27

be condemned without opportunity for defence, and that when a corporation entered another state and complied with the law of that state by designating an agent upon whom process against it might be served, service upon such agent was entirely within the principles which applied to the bringing of the corporation before the court.

The court said, with respect to the provision providing for the service upon the agent, "We find nothing in this provision either unreasonable in itself or in conflict with any principle of public law. It cannot be deemed unreasonable that the State of Ohio should endeavor to secure to its citizens a remedy in their domestic forum upon this important class of contracts made and to be performed within that state and fully subject to its laws; nor that proper means should be used to compel foreign corporations, transacting this business of insurance within the state, for their benefit and profit, to answer there for the breach of their contracts of insurance there made and to be performed.

"We consider this foreign corporation, entering into contracts made and to be performed in Ohio, was under an obligation to attend, by its duly authorized attorney, on the courts of that state, in suits founded on such contracts, wherever notice should be given by due process of law, served on the agent of the corporation resident in Ohio and qualified by the law of Ohio and the presumed consent of the corporation to receive and act on such notice; that this obligation is well founded in policy and morals, and not inconsistent with any principle of public law, and that when so sued on such contracts in Ohio the corporation was personally amenable to that jurisdiction, and we hold such a judgment, recovered after such notice, to be as valid as if the corporation had had its habitat within the state—that is, entitled to the same faith and credit in Indiana as in Ohio, under the constitution and laws of the United States."

The cases which hold that the right of a foreign corporation to engage in business within a state other than that of its creation depends solely upon the will of such other state, and its entrance may be coupled with such conditions as such other state prescribes, have been heretofore cited.

The supreme court of the United States has always, therefore, held that service upon the designated agent of a foreign corporation, which agent was appointed in pursuance of the laws of the state which permitted the foreign corporation to come within its borders, was sufficient to bring the corporation before the court. *Lafayette Insurance Co.* v. *French, supra; Ex parte Schollenberger, 96 U. S. 369; 24 L. Ed. 853; New England Mutual Life Insurance Co.* v. *Woodworth, 111 U. S. 138, 146; 28 L. Ed. 379, 381; Ex parte Louisville Underwriters, 134 U. S. 488; 33 L. Ed. 991; New York, Lake Erie and Western Railway Co.* v. *Estill, 147 U. S. 608; 37 L. Ed. 301; Barrow Steamship Co.* v. *Kane, 170 U. S. 100; 40 L. Ed. 964; Connecticut Mutual Life Insurance Co.* v. *Spratley, 172 U. S. 613; 43 L. Ed. 569.*

The defendant, however, insists that service upon a designated agent, excepting while the corporation is actually engaged in business in the state, or after its withdrawal from business in the state, is not due process of law, and that the supreme court of the United States would therefore condemn a statute which authorized such service.

A consideration of the reasoning of that court upon the subject-matter makes it difficult to see how this contention can be sustained, and I think that its decisions likewise indicate that it either has already decided the contrary or has intimated that it will so decide when called upon so to do.

In the case of *Mutual Reserve Fund Life Association* v. *Phelps, 190 U. S. 147; 47 L. Ed. 987,* the court, after citing the case of *Home Beneficial Society* v. *Muehl, 22 Ky. L. Rep. 1378; 59 S. W. Rep. 520,* said:

"In that case the society while doing business in the state issued the policy sued on, but in April, 1894, before the action was brought, ceased to do business and withdrew all of its agents. Service on the commissioner was held good. The court, in its opinion, after referring to the statute of 1870 and the change made by section 631, under which this service was made, said (*p. 1379, S. W. Rep. 521*) : 'It is sufficient to say that the agency created by the act of 1893 is, in its terms, broader than that created by the act of 1870. The words of the later

statute express no limitation. Whatever limitation shall be applied to it must be by implication. And when we consider the purpose of the act it becomes clear that it would be frustrated by the construction contended for. There is no need of the right to serve process upon the insurance commissioner so long as the company has agents in the state, and we think the purpose of the section was to provide a means of obtaining service of process upon foreign companies which no longer had agents in the state upon whom process might be served in suits upon contracts made in this state, whatever may be held as to suits upon contracts entered into elsewhere.' See, also, *Germania Insurance Co.* v. *Ashby, 23 Ky. L. Rep. 1564; 65 S. W. Rep. 611.* * * * As an original question, and independently of any expression on the part of the court of appeals (of Kentucky), we are of opinion that such is the true construction. This and other kindred statutes enacted in various states indicate the purpose of the state that foreign corporations engaging in business within its limits shall submit controversies growing out of that business to its courts, and not compel a citizen having such a controversy to seek the state in which the corporation has its home for the purpose of enforcing his claims. Many of those statutes simply provided that the foreign corporation should name some person or persons upon whom service of process could be made. The insufficiency of such provision is evident, for the death or removal of the agent from the state leaves the corporation without any person upon whom process can be served. In order to remedy this defect some states, Kentucky among the number, have passed statutes like the one before us, providing that the corporation shall consent that service may be made upon a permanent official of the state, so that the death, removal or change of officer will not put the corporation beyond the reach of the process of the courts. It would obviously thwart this purpose if this association having made, as the testimony shows it had made, a multitude of contracts with citizens of Kentucky, should be enabled, by simply withdrawing the authority it had given to the insurance commissioner, to compel all these parties to seek the courts of New York for the enforcement of their claims. It is true in this case the association did not voluntarily

withdraw from the state, but was in effect by the state prevented from engaging in any new business. * * * It would be a harsh construction of the statute that, because the state had been constrained to compel the association to desist from engaging in any further business, it also deprived its citizens who had dealt with the association of the right to obtain relief in its courts. We conclude, therefore, that the service of summons on the insurance commissioner was sufficient to bring the association into the state court, and there being nothing else to impeach the judgment, it must be considered as valid."

This is as convenient a place as another, and perhaps peculiarly appropriate, to notice the fact that there are decisions of the subordinate tribunals of the United States upon each side of this question. The following sustain the jurisdiction: *Collier* v. *Mutual Reserve Life Association, 119 Fed. Rep. 617; Davis* v. *Kansas and Texas Coal Co., 129 Fed. Rep. 149,* while these are to the contrary: *De Castro* v. *Compagnie Francaise, 76 Fed. Rep. 425; Swann* v. *Mutual Reserve Fund Life Association, 100 Fed. Rep. 922; Friedman* v. *Empire Life Insurance Co., 101 Fed. Rep. 535; Forrest* v. *Pittsburgh Bridge Co., 116 Fed. Rep. 357; Cady* v. *Associated Colonies, 119 Fed. Rep. 420.*

Most, if not all, of these last-named cases were cited to the supreme court of the United States on the brief of the counsel for the appellants in the case of the *Mutual Reserve Fund Life Association* v. *Phelps,* just cited. It will thus be seen that the supreme court of the United States had before it decisions of its own subordinate tribunals which had arrived at an opposite conclusion, and which, of course, were disregarded and their reasoning disapproved in this case.

The reasoning of the court in the *Phelps Case* is in keeping with its expression of opinion in other cases decided by it.

In the case of *Henrietta Mining and Milling Co.* v. *Johnson, 173 U. S. 221; 43 L. Ed. 675,* the court was dealing with a case in which there was a statute enumerating a class of persons upon whom process might be served against foreign corporations, and there was also a statute making it the duty of foreign corporations to designate an agent, but not providing any penalty for failure to do so.

Service was made upon the general manager of a company which had failed to designate an agent. The company, in resisting the validity of the service, argued that the statute providing for the appointment of an agent was exclusive, and that if it had failed to appoint an agent it could not be served under the statute enumerating a class. The court held that the service was good, and in doing so held that the statutes providing for the designation of an agent "were not intended to be exclusive, and were merely designed to secure a special mode of service in case the corporation had ceased to do business in the territory, or had no local or official agent appointed in pursuance of section 348."

The cases in the supreme court of the United States upon which the defendants rely, such as *St. Clair* v. *Cox, supra,* and *Connecticut Mutual Life Insurance Co.* v. *Spratley, 172 U. S. 602; 43 L. Ed. 569,* and *Conley* v. *Mathieson Alkali Works, 190 U. S. 406; 47 L. Ed. 1113,* and the cases therein cited, will be found, upon investigation, to be those in which service was attempted to be made upon some officer or other representative of the corporation not specially designated, and the question there, as has heretofore been pointed out, always is, was the company transacting business there at the time that the service was made?

It is either pointed out by the court, or is clear from the facts, that the ground of the decision in each case was, as it is summed up in *Barrow Steamship Co.* v. *Kane, 170 U. S. 100* (at *p. 110*); *42 L. Ed. 964* (at *p. 968*), that the suit was in a state "in which the corporation neither does business *nor has authorized any person to represent it."* They all clearly distinguish between such cases and those in which a designated agent is served.

There has been no case cited to me from the supreme court of the United States which holds that, where a foreign corporation has entered another state and complied with the laws of such state by designating an agent, and such agency under the terms of the law continues at least so long as the corporation has unliquidated causes of action contracted in that state, service upon

such designated agent is not sufficient to bring the foreign corporation before the court.

I conclude, therefore, that the acts of the legislature of New Jersey in question are valid, constitutional and enforceable.

## III.

I do not think this contention of the defendant is of any weight.

Before discussing the exact question it is proper to suggest that courts, looking at the substance of things and seeking to serve the laudable purpose of the state to protect its citizens in respect to their dealings with foreign corporations which have come into their state, have held that such foreign corporations were "doing business" therein when, as a fact, they were doing so under the guise of domestic corporations.

The material inquiry always is, was the foreign corporation in fact here transacting business? The immaterial consideration is whether they used one instrumentality or another in transacting such business.

Under these cases it might be held that the defendant could be found to be still here doing business, *i. e.*, if it still does certain of its business through the instrumentality of the United Electric Company of New Jersey. See *Buie* v. *Chicago, Rock Island and Pacific Railway Co., 95 Tex. 51; 55 L. R. A. 861* (at *p. 864 et seq.*), where will be found a long list of cases.

To return to the exact contention under this head, it is that in its application to be admitted to do business it specified

"the business in which the said company is engaged, and in which it proposes to engage in the State of New Jersey, is the manufacture and sale of gas, gas works and gas apparatus."

It insists that the business out of which this cause of action arose was not within that specified, and hence the corporation could not be effectually reached by process served on the designated agent.

To hold that the agency created in accordance with the statute is only servable for causes of action arising out of the business

which the corporation specified that it intended to transact is to limit the act by construction and implication. This would be contrary to its reason and spirit, and should not be done.

The defendant company came here and obtained a license and did business. It appointed an agent. So long as it is proper to hold that agency continues, I think it is servable for any cause of action which arose here while the company was here transacting business. The cause of action in question was such.

The act (*P. L. 1894 p. 347*) provides

"that the business of such corporation to be carried on within this state is such as may be lawfully carried on by corporations incorporated under the laws of New Jersey for similar business."

The Corporation act (*Rev. 1896 § 96*) provides:

"Foreign corporations doing business in this state shall be subject to the provisions of this act, so far as the same can be applied to foreign corporations."

That which the defendant did (according to the facts now before the court) was to come into the State of New Jersey, organize and control a corporation, cause such corporation to issue to it bonds and stocks, took such bonds and stock, and with them, or some of them, purchased the stocks held in various New Jersey corporations engaged in the business of electric and gas lighting, and also took from such persons certain sums of money as further consideration, and further gave a guaranty that for five years the United Electric Company would pay the interest on its bonds.

Taking this all together, it was certainly a "doing of business" in this state.

If it contends that it had no power to do this business, it is met with the doctrine maintained in this state that it may not plead *ultra vires* while it retains the fruits of the alleged illegal acts. *Camden and Atlantic Railroad Co.* v. *Mays Landing and Egg Harbor Railroad Co., 48 N. J. Law (19 Vr.) 530 (Court of Errors and Appeals, 1886)*; *Chapman* v. *Ironclad Rheostat Co., 62 N. J. Law (33 Vr.) 497 (Supreme Court, 1898)*; see,

also, *Lewis* v. *American Savings and Loan Association,* 98 *Wis.* 203; 39 *L. R. A.* 559 (at *p.* 567).

From the statutes just quoted, it is very doubtful whether it could set up any claim of *ultra vires,* even if it were not forbidden to do so by the doctrine of estoppel.

Those statutes give all the power to a foreign corporation that a New Jersey corporation of like character would have. There is considerable discussion in the cases as to whether, under similar conditions, the foreign corporation does not become *quoad hoc,* or *pro hac vice,* a corporation of the sister state. See text and collection of cases in *Louisville, New Albany and Chicago Railway Co.* v. *Louisville Trust Co., 174 U. S. 562; 43 L. Ed. 1087;* also, *Floyd* v. *National Loan and Insurance Co., 49 W. Va.* 327; 54 *L. R. A.* 536; *Washington, &c., Association* v. *Stanley, 38 Oreg. 319; 58 L. R. A. 816.*

Our courts have held that a foreign corporation licensed in this state is so far a domestic corporation that attachment will not lie against it. *Goldmark* v. *Magnolia Metal Co., 65 N. J. Law (36 Vr.) 341* (at *p. 350*) (*Supreme Court, 1900*). See a similar decision in Iowa. *German Bank* v. *American Fire Insurance Co., 83 Iowa 491; 32 Am. St. Rep. 316; 50 N. W. Rep. 53.*

Foreign corporations, in any event, can hold stocks in New Jersey corporations, so far as our law is concerned. *Warren* v. *Pim, 66 N. J. Eq. (21 Dick.) 353* (*Court of Errors and Appeals, 1904*).

I do not think this question is properly raised by the defendant in the present inquiry.

Upon a hearing upon bill and plea raising a question of jurisdiction, the merits may not be gone into further than is necessary to determine the question of jurisdiction. *National Condensed Milk Co.* v. *Brandenburgh, 40 N. J. Law (11 Vr.) 113* (*Supreme Court, 1878*).

It plainly appears that the foreign corporation in this case did, while here under license, transact the business out of which this cause of action arose.

The question of want of power does not appear from any alle-

gations in the plea, and our act, as we have heretofore seen, vests certain powers in the corporation. See *Benton* v. *Elizabeth, 61 N. J. Law (32 Vr.) 411* (at *p. 412*) (*Supreme Court, 1897*).

I therefore conclude that for this cause of action it is amenable to the jurisdiction of our court if process is served in accordance with the statute.

## IV.

The defendant contends that by passing the resolution on the 9th day of September, 1903, formally revoking in writing the designation of R. W. Elliott as its agent, and sending a copy thereof to said Elliott, and lodging another copy on the 10th of September, 1903, with the secretary of state of New Jersey, which was placed by him with the other files or papers of the said defendant company in his office, and of which an entry was made by him on his docket of foreign corporations to the effect that the United Gas Improvement Company had withdrawn from the state, it had effectually terminated the agency of Elliott, and service upon Elliott could not thereafter be made by the complainant in this action.

As has heretofore been pointed out, it has been held that the permission of the state for a foreign corporation to come in upon certain conditions and the acceptance of such terms by the corporation does not constitute a contract. *Connecticut Mutual Insurance Co.* v. *Spratley, 99 Tenn. 322; 44 L. R. A. 442; S. C., 172 U. S. 602; 43 L. Ed. 569.*

I think that it might properly be said that it fixed the status of corporations which accepted the terms of such acts.

It should also be observed that there is no provision in the statute for the secretary of state to keep any docket, and any such book would not be a legal record of which the public would be affected with notice.

Besides which the notice there given was merely that the company had "withdrawn from the state," not that it had revoked the agency of Elliott.

Furthermore, it should be noted that the act under which the company entered provides

"that the agency so designated shall continue in force until revoked in writing and some other citizen or New Jersey corporation shall be substituted therefor. *P. L. 1894 p. 346.*

The amended act now in force provides "the agency so constituted shall continue until the substitution by writing of another agent." *P. L. 1896 p. 307 § 97.*

It would, of course, be erroneous to consider these agencies as if they were ordinary contractual agencies. I mean by this that an agent who is selected by the corporation to transact some portion of its business, or do some act or acts for it, is such agent by contract, and if he is served with process, for instance, the question may very well arise whether he had not been discharged as agent previous to the service.

Even in such cases it is held that notice of the discharge to be effectual against the complainant must be given to the complainant and not solely to the agent. *Capen* v. *Pacific Mutual Insurance Co., 25 N. J. Law (1 Dutch.) 67 (Supreme Court, 1855)*; *Gibson* v. *Insurance Company, 144 Mass. 81; 10 N. E. Rep. 729.*

But a reading of the cases heretofore cited upon the question of the appointment of agencies under statutes such as we are considering carries conviction that this legal agency is not to be governed by the rules relating to contractual agency, and that the corporation may not defeat the very purpose of the act by discharging the agent.

It is not necessary to enlarge upon the fatuity of legislation which would permit a foreign corporation to come within the state and transact business upon condition that it name an agency upon whom process should be served, and leave it within the power of the corporation to prevent service by discharging the agent and revoking his authority whenever it pleased, leaving suitors within the state powerless to bring the corporation into court.

As was said in *Mutual Reserve Fund Life Association* v. *Phelps, supra:* "It would obviously thwart this purpose" (namely, the having of an agency to be served) "if this association * * * should be enabled by simply withdrawing the

authority it had given to the insurance commissioner to compel all the parties to seek the courts of New York for the enforcement of their claims."

And in that case, although the company was forced out of the state, the court held the agency continued. See, also, *Connecticut Mutual Life Insurance Co.* v. *Duerson, 28 Grall. 630* (at *p. 644 et seq.*).

It clearly appears in this case that so early as August, 1903, the complainant in this suit presented a communication to the United Electric Company of New Jersey, requesting it to bring a suit against the United Gas Improvement Company for the cause of action herein set up. The allegations of the bill are that the United Electric Company is but the creature of the United Gas Improvement Company, and it would therefore follow that the former communicated this information to the latter.

If that be so, I am of opinion that it should be held that a revocation would not be effectual, even if there were statutory authority for a revocation. *Michael* v. *Nashville Mutual Ins. Co., 10 La. Ann. 737.*

I conclude that under the statute the defendant had not the power to revoke the agency it had created as against those whose causes of action arose within the State of New Jersey while the defendant was transacting business here, and that its efforts in that direction were futile.

The result of my conclusions is that the plea must be overruled, and I will so advise.