Life Insurance Co. *v.* Spratley.

LIFE INSURANCE CO. *v.* SPRATLEY.

(*Jackson.*   September   20,   1897.)

1. CORPORATIONS.   *Statute authorizing service of process upon agent of foreign company constitutional.*

Acts 1887, Ch. 226, subjecting foreign corporations to suit in the Courts of this State, as regards transactions had or causes of action arising within the State, by service of process upon any agent of such company found in the county where the suit is brought, or, in the absence of an agent, then upon any person within the county who represented the company at the time of the transaction out of which the suit grows, is construed as embracing only such persons or agents as may be deemed properly and reasonably to represent the companies in this matter, and, thus construed, the Act is not repugnant to the "due process" clauses of the Federal and State Constitutions.   (*Post, pp. 323-333.*)

Constitution construed: Art. 1, § 17; U. S. Constitution, Fifth and Fourteenth Amendments.

Act construed: Acts 1887, Ch. 226, carried into Code, §§ 4543–4546 (S.).

Cases cited: Tel. Co. *v.* Turner, 88 Tenn., 265; Railroad *v.* Walker, 9 Lea, 475; Peters *v.* Neely, 16 Lea, 280; 18 How., 404; 8 Wall., 168; 106 U. S., 350; 15 Col., 433; 61 Mich., 226; 87 N. Y., 137; 63 N. Y., 114.

2. SAME.   *Service upon agent of foreign company sufficient, when.*

In a suit brought in a Court of this State against a foreign life insurance company that has retired from active business in the State and withdrawn its regular agents, upon a policy issued in this State before its retirement, it is sufficient, under Acts 1887, Ch. 226, that process was served upon an agent of the company temporarily here for the sole purpose of investigating and compromising the particular claim sued on.   (*Post, pp. 323-333.*)

Acts construed: Acts 1887, Ch. 226.

Life Insurance Co. *v.* Spratley.

3. SAME. *Act* 1887 *applies to foreign insurance companies that had constituted Secretary of State their agent to acknowledge process.*

That a foreign insurance company may have been required, as a condition precedent to its entering upon the transaction of business in this State, to give the Secretary of State an irrevocable power of attorney to accept service of process for it, does not exclude it from the operation of Acts 1887, Ch. 226, authorizing service upon its agents. (*Post, pp. 333–337.*)

FROM SHELBY.

Appeal from Chancery Court of Shelby County. JOHN L. T. SNEED, Ch.

ESTES & FENTRESS for Insurance Company.

TURLEY & WRIGHT for Spratley.

BEARD, J. The complainant is a corporation organized under the laws of the State of Connecticut to carry on a life insurance business, and has its principal situs in Hartford, in that State. For many years prior to the year 1894, it actively prosecuted its work in the State of Tennessee, soliciting applications for life insurance and issuing policies upon such applications as were approved by its officers. In the year 1889, and afterwards in 1893, an agent of this company was in the State of Tennessee, and, by his solicitations, induced one B. R. Spratley, a citizen of this State, to apply for insurance on his own life, and upon these applications the complainant

issued two policies, one of which was for $5,000 and the other for $3,000, payable at his death to his wife, the defendant, Linda J. Spratley. Both policies were delivered in this State.

In the year 1896, B. R. Spratley died, and proof of his death was forwarded to the company. Very soon thereafter complainant sent O. N. Chaffee, one of its employes, into the State to investigate this claim, and the conditions under which this death occurred. He came, and had interviews with the beneficiary, Mrs. Spratley, her brother, and other parties, of all of which he made report to his home company. Upon receiving this report, the complainant, through its vice president, wired the agent as follows: "We think case" (referring to Spratley's death claim), "should be settled for reserves or thereabouts." After receiving this telegram, Chaffee visited Mrs. Spratley, and submitted an offer to settle on the terms indicated in it; this offer, however, was rejected. While in this State on the business and occasion referred to, suit was instituted by the beneficiary against the insurance company for the amount alleged to be due on these policies, in the Circuit Court of Shelby County, and process was served on Chaffee, as the agent of the company. At the same time all the requirements of Chapter 226 of the Session Acts of 1887, with regard to the giving other and further notice of the bringing and pendency of this suit, were complied with.

The insurance company ignoring this action, in due time judgment by default was taken against it, upon which an execution was subsequently issued. Thereupon, the bill in this cause, attacking the judgment upon the ground that it was taken without valid service of process, the complainant alleging that it had not, at the time of the institution of the suit in the Circuit Court, nor had had for several years prior thereto, any office or agency in Tennessee; that Chaffee, upon whom service was attempted, was a special agent, for a special purpose, only temporarily in Memphis, and that, as such special agent, he was not amenable to process issued against the complainant company; and, further, that Chapter 226 of the Acts of the Legislature of 1887, upon which the Circuit Court procedure rested, was void, because it violated Article 5 of the amendments to the Constitution of the United States, and also the Fourteenth Amendment to the Constitution of the United States, in that, under the provisions of this Act, a defendant was "deprived of property without due process of law;" and it also violated so much of Section 17 of the Article of the Constitution of the State of Tennessee as provides that "every man . . . shall have remedy by due course of law." The first ground of attack will be hereafter noticed. We will at once examine the question raised upon the constitutionality of this Act.

Sections 2831–2834 of the Code (M. & V.), corresponding with §§ 4539–4542 of Shannon's new code,

regulate the mode of suing corporations, and apply equally to foreign and domestic corporations. *Chi.* *& A. C. R. R.* v. *Walker,* 9 Lea, 475; *Peters* v. *Neely,* 16 Lea, 280. But they did not cover the case of a foreign corporation having no resident agent in the State. *Chi. & A. C. R. R.* v. *Walker,* *supra.* This defect in the law, disclosed by this last named case, led to the passage of the Act which is assailed for unconstitutionality by the complainant. The provisions of this Act are embodied in §§ 4543– 4546 of Shannon's new code. By the first section it is provided that "any corporation claiming exist- ence under the law of any other State, found doing business in this State, shall be subject to suit here to the same extent that corporations of this State are, by the laws thereof, liable to the same, so far as relates to any transaction had in whole or in part within this State, or any cause of action arising here, but not otherwise." Section 2 defines what is meant by the term "found doing business in this State," and in these words: "Any corporation hav- ing any transaction with persons, or having any transaction concerning any property, situated in this State, through any agency whatever acting for it within this State, shall be held to be doing business within the meaning of Section 1." Section 3 pro- vides that "process may be served upon any agent of said corporation found within the county where the suit is brought, no matter what character of agent such person may be, and, in the absence of

such an agent, it shall be sufficient to serve the process upon any person, if found within the county where the suit is brought, who represented the corporation at the time the transaction out of which the suit arising took place," etc.

In *Telephone Co.* v. *Turner*, 4 Pickle, 265, it is held that this Act did not apply to any foreign corporation having resident agents in the county where the suit is brought, but that the case presented in this record is one within its provisions, we think is clear. The question is, is it constitutional?

It may be said that in this legislation Tennessee is only following in the footsteps of many other States of the Union. So diversified and widespread have been the operations of corporations, that possibly every State has, for the protection of its own citizens, found it necessary to adopt similar laws. In *Lafayette Ins. Co.* v. *French*, 18 Howard, 404, with regard to a judgment obtained in a Court of Ohio against an Indiana corporation, in a suit where service was had on a resident agent in Ohio, the Supreme Court of the United States said: "It cannot be deemed unreasonable that the State of Ohio should endeavor to secure to its citizens a remedy in their domestic forum upon this important class of contracts, made and to be performed within that State, and fully subject to its laws; nor that proper means should be used to compel foreign corporations transacting their business of insurance within the

State for their benefit and profit, to answer there
for the breach of their contracts of insurance there
made and to be performed."

For a long period it has been settled that a
corporation created in one State has no right, under
the Constitution of the United States, to transact
business in another State, save by the consent, ex-
press or implied, of that State, and this consent
may be given on such terms as the State may see
proper to impose, and the terms so imposed are
binding on the corporation. *Paul* v. *Virginia*, 8
Wall., 168.   The only limitation upon this right is
that the conditions imposed must not be repugnant
to the Constitution or laws of the United States,
or to "that principle of natural justice which for-
bids condemnation without opportunity for defense."
*Lafayette Ins. Co.* v. *French, supra.*   So that if
"a State permits a foreign corporation to do busi-
ness within her limits, and at the same time pro-
vides that in suits against it for business there
done, process shall be served upon its agent, the
provision is to be deemed a condition of the per-
mission; and corporations that subsequently do busi-
ness in the State are to be deemed to assent to
such condition, as fully as though they had spe-
cially authorized their agent to waive service of
process." *St. Clair* v. *Cox*, 106 U. S., 350.   Con-
tinuing in that case, the Court said: "Such condi-
tion must not, however, encroach upon that prin-
ciple of natural justice which requires notice of a

suit to a party before he can be bound by it. It must be reasonable, and the ·service provided should be only upon such agents as may be properly deemed representatives of the foreign corporation.''

As illustrating the length to which the Courts have gone in subjecting foreign corporations to actions or demands which arise in the State of the forum, by service of process on some representative within its territorial limits, the cases of *Coleman Iron Works* v. *Mining Co.*, 15 Col., 433, *Sheckle* v. *Construction Co.*, 61 Mich., 226, and *Pope* v. *Terre Haute Car Mfg. Co.*, 87 N. Y., 137, may be referred to. These cases carry the doctrine of representation far beyond the case presented in this record, and much beyond what is required of us in order to sustain the judgment here complained of. In *Pope* v. *Terre Haute Car Mfg. Co.*, *supra*, the foreign corporation, in a suit by a citizen of New York, on a demand growing out of a transaction in that State, was brought into Court by service on its president, who was passing through to a seaside resort, and was in no sense there in his official capacity, or upon any business connected with his corporation, and yet it was held that this service would sustain a judgment against the corporation. While not feeling it necessary to agree to the conclusion reached, yet, the following paragraph, taken from the opinion in that case, does meet with our approval: ''The object of all service of process for the commencement of a suit, or any other legal proceeding, is to

give notice to the party proceeded against, and any service which virtually accomplishes that end, answers the requirements of natural justice and fundamental law. (*Gibbs* v. *Queen Ins. Co.*, 63 N. Y., 114); and what service shall be deemed sufficient for that purpose is to be determined by the legislative power of the country in which the proceeding is instituted, subject only to the limitations that the service must be such as may be reasonably expected to give the notice aimed at." So, in that case, the Supreme Court of New York held that, while the president of this corporation was not within the State on the business of the corporation, yet, as it was his duty to convey notice of the commencement of the suit to his company, "that he would do so could reasonably be presumed and expected."

Mr. Murfree, in his recent work on Corporations, in Sec. 215, after speaking of the great variety among the statutory provisions for bringing foreign corporations into the home forum, says: "The purpose of such provisions being to insure the giving of due notice to the corporation, that idea is given prominence in all the decisions interpreting them. Consequently, the general rule . . . is that if the person served sustain sufficient character and rank to render it reasonably certain that the corporation would be apprised of the service, the requirement of the statute is answered;" and it may be added that the demand of natural justice will be thereby satisfied. Perhaps no better statement of the doc-

trine of substituted service can be found than, that of Lord Chancellor Cranforth, in *Hope* v. *Hope*, 4 DeGex, McN. & G., p. 328, which is as follows: "In cases where a defendant is abroad, the question is, whether there is any person here who may be fitly served, and service upon whom may be treated as equivalent to service upon the absent person himself. Now, this has been allowed in a variety of cases; for instance, where there has been an agent in this country, managing all the affairs of the defendant who is abroad, and regularly communicating with him upon his affairs, or where he has an agent here specially managing the particular matter involved in the suit. In such cases the Court has felt that it might safely allow service upon the agent to be deemed good service upon the person abroad, because the inference is irresistible that service so made upon the agent is service either on a person impliedly authorized to accept that particular service, or who certainly will communicate the process so served to the party who is not in this country to receive it himself. The object of all service is, of course, only to give notice to the party on whom it is made, so that he may be made aware of and may be able to resist that which is sought against him; and when that has been substantially done, so that the Court may feel perfectly confident that service has reached him, everything has been done that is required."

It will not be assumed by this Court that in the

Act of 1887 the Legislature intended to disregard this principle of natural justice and provide for the service of process upon an agent of a foreign corporation found within the territorial limits of the State, without regard to whether he was here in a representative capacity on the business of his principal, but rather the contrary; and certainly this corporation cannot be heard to complain, whatever others might do, because the agent upon whom service was made in this case, was, at the time, in this State as the representative of the complainant, examining for it, into the conditions under which Spratley's death occurred, and, finally, upon the authority of his employer, submitting a proposition of compromise of the claim now in controversy. Not only had complainant transactions in this State with regard to the policies, before and at the time of their delivery, but through its agent was found doing business in respect to them at the time of the institution of this suit, and it cannot be otherwise than that this agent would be reasonably certain to inform his principal of the fact that it had been brought. Certainly, in a case where this reasonable presumption may be made, we do not feel constrained to overturn a beneficent statute, upon the suggestion of a mere possibility that it might, in some supposititious cases, be perverted to an unjustifiable end. On this point, we are satisfied that the complainant was not put to judgment without due process of law, and that the statute in

question is not open to the attack made on it. It is proper to add that we have carefully examined *Maxwell* v. *R. R.*, 34 Fed. Rep., 286; *U. S.* v. *Telephone Co.*, 27 Fed. Rep., 17; *R. R.* v. *Pinkney*, 149 U. S., 194; *In. re Hohorst*, 150 U. S., 653, relied on by complainant's counsel, and we find nothing in them in conflict with this conclusion.

But it is argued that the Act of 1887 did not apply to this corporation, because it had filed, under the requirements of Ch. 66 of the Acts of 1875, Sec. 12, an irrevocable power of attorney authorizing the Secretary of State to accept service. To this it may be said (1) that this agreement is in the teeth of complainant's bill, in which it alleges that it was a nonresident of this State and had no office or agent in Tennessee, or had not had for some years preceding the institution of the suit on the policies, thus, by implication at least, negativing its present proposition. (2) But, as a mattter of law, is the contention sound? The legislation on this subject is as follows: Chapter 23 of the Acts of 1873, Sec. 2, required foreign fire insurance companies to file with the Treasurer of the State a written instrument authorizing any agent of such company in the State to acknowledge service of process; and Ch. 66 of the Acts of 1875, Sec. 12, required foreign life insurance companies to file with the Insurance Commissioner a power of attorney authorizing the Secretary of State to accept service. Chapter 23 of the Acts of 1873 was repealed by Ch. 47 of the Acts

of 1891, and Ch. 66 of the Acts of 1875, as well as Ch. 47 of the Acts of 1891, were repealed by Ch. 160, Sec. 49, of the Acts of 1895. All these repeals were express.

The suit brought by Mrs. Lynda Y. Spratley in the Circuit Court was instituted on the fifteenth day of April, 1896. Chapter 160 of the Acts of 1895, repealing Ch. 66 of the Acts of 1875, in Sec. 9, contains a provision requiring every foreign insurance company, fire or life, as a prerequisite to admission into the State for the transaction of business, to constitute the Insurance Commissioner its attorney to accept service. It is not claimed that the complainant company had acted in accordance with this provision.

From July 1, 1894, down to the time the suit in the Circuit Court was brought, complainant company was doing a limited business in Tennessee. It had a large number of policies in the State, from which it collected its premiums at stated periods; and when a death occurred, it sent its agent into the State to make the necessary investigation and report upon the circumstances under which the injured party died, as was done in this particular case. Ordinarily, the rule is that where civil proceedings, or jurisdiction in civil cases, depend upon a statute, they fall with the repeal of that statute. Endlich on Int. of Stats., Sec. 479. Many illustrations of this rule will be found in the cases, among which are *State* v. *Brookam*, 22 W. Va., 214; *Stephenson*

v. *Doe*, 8 Blackf. (Ind.), 508; *Morgan* v. *Thorn*, 7 M. & W., 400; *Bailey* v. *Mason*, 4 Minn., 546; *Butler* v. *Palmer*, 1 Hill (N. Y.), 324; *Williams* v. *Lincoln County*, 35 Me., 345; *Terry* v. *People*, 8 Mich., 128; *Lamb* v. *Schatter*, 54 Cal., 319; *Auding* v. *Levy*, 57 Miss., 58. But if we concede that this rule does not apply in this case, and that the power of attorney given by the complainant is irrevocable and stands to-day as if the Act of 1875 still existed, yet it does not follow that the service on Chaffee, as agent, in the Circuit Court, was ineffectual to bring complainant into that Court. The continued existence of the power of attorney does not preclude the complainant from being amenable to the operation of the Act of 1887. The Secretary of State was not the agent of this corporation, save in the most restricted sense, and he was located at the capital of the State, where the discharge of his official duties properly placed him. We may concede that Mrs. Spratley might have called upon him to accept service of her process, but instituting her suit as she did, at her own home, in a remote part of the State, where there was no resident agent of complainant, but finding one there temporarily, whose agency embraced the very subject of her controversy, she had a case within the purview, and she was entitled to avail herself, of the Act of 1887. As this Court said, in *Telephone Co.* v. *Tanner supra*, this Act was not one of "limitation, but of enlargement," and we are unable to discover why

it should not be operative against complainant, while at the same time its power of attorney remains irrevocable.

But we cannot accede to the proposition that, by complying with the Act of 1875, by the execution of its power of attorney to the Secretary of State, that complainant thereby made a contract with the State of Tennessee, which is protected by the contract provision of the Constitution of the United States, and that no subsequent legislation can make this corporation amenable to action in the Courts of the State by service of process on any other agent. We are unable to discover any element of a contract which precluded the State thereafter from adopting legislation which contemplated bringing this corporation into our Courts by service on such other agents as reasonably represented it and were found carrying on its business within our territorial limits. If the argument of complainant's counsel on this point is sound, then, if the office of Secretary of State should be abolished, this result being the act of the State, for which complainant would in nowise be responsible, then our citizens could obtain no redress for their grievances sustained at the hand of this company, in their domestic Courts, even if there was an agent with full power of representation residing in each county of the State. A position from which such a conclusion may be deduced, we think necessarily unsound.

We deem the Act of 1875, in this regard, as

Life Insurance Co. *v.* Spratley.

simply imposing a condition for the State's permission to a foreign life insurance company to come within its borders, and transact business with its citizens, and there was nothing in it, or in the acceptance of its terms by the complainant, precluding the Legislature from thereafter making other provision by which, through service upon other agents, either permanently residing, or temporarily found here, this corporation might be made to answer in our Courts for breach of its contracts made here.

The decree of the Chancellor is reversed, and a decree will be entered against complainant and the surety on its injunction bond for the amount of the judgment of the Circuit Court and interest upon it and all cost of the two Courts.