ATLANTIC COAST LINE RAILROAD COMPANY *et al. v.*
CHARLES E. RICHARDSON.*

*(Nashville.* December Term, 1908.)

1. **PARTNERSHIP.** Does not exist by voluntary association of railroads for transportation of freight, when.

   A voluntary association of independent, but connecting, railroad corporations, for the more expeditious handling and transportation of freight passing over their several lines to points beyond, does not constitute a partnership, or anything upon which the doctrine of representation, or of principal and agent, as between such railroads, can be invoked. (*Post, pp.* 451, 457, 458.)

   Cases cited and approved: Post v. Railroad, 103 Tenn., 184; United States v. American Bell Telephone Co., 29 Fed., 17.

2. **FOREIGN CORPORATIONS.** Process cannot be served upon a traveling agent not connected with the transaction not arising in this State, when.

   A foreign railroad corporation, operating a line of railroad wholly outside of this State and having only a soliciting agent in this State, which commits a wrong by the negligent handling of a nonresident's freight passing over its line as an intermediate carrier, is not brought within the jurisdiction of the court by service of process upon its traveling agent where he had no connection with the shipment, because such corporation is not "doing business in the State," in the sense of our statute (Shannon's Code, secs. 4543-4545) authorizing the service of process on the agents of foreign corporations "doing business" in this State, for the reason that the shipper's "cause of action" for the wrong does not arise from "any transaction with persons" or "concerning any property situated in this State, through any agency whatever, acting" for the corporation "within the State," although the wrong is not discovered until the freight reaches its destination here. (*Post, pp.* 450-458, 461-463.)

---

*As to liability of foreign corporations to suit, see note to Reeves v. Southern R. Co. (Ga.), 70 L. R. A. 523.

Railroad v. Richardson.

Code cited and construed:   Secs. 4543-4545 (S).

Acts cited and construed:   Acts 1887, ch. 226, secs. 1-3.

Cases cited and approved:   Insurance Co. v. Spratley, 99 Tenn., 322; State v. Insurance Co., 106 Tenn., 294; Insurance Co. v. Spratley, 172 U. S., 602.

Case cited and distinguished:   Railroad v. Bean, (Sept. term, 1908).

3.  **SAME. Same. Statute authorizing service of process upon any agent is circumscribed by other provisions.**

While the purpose of the statute (Shannon's Code, sec. 4545) authorizing process to be served upon any agent of a foreign corporation found within the county where the suit is brought, whatever the character of his agency may be, was to remedy a defect in our statutes providing for service of process on corporations in that they were not applicable to foreign corporations having no resident agent, or local office, but only having a traveling agent, not localized in this State, yet the right of suing foreign corporations in the courts of this State is circumscribed by sections 4543 and 4544 of said Code, limiting the right to sue such corporations "doing business" in this State as there defined, and as shown in the second headnote. (*Post, p.* 455.)

Code cited and construed:   Secs. 4543-4545 (S).

Acts cited and construed:   Acts 1887, ch. 226, secs. 1-3.

Cases cited and approved:   Railroad v. Walker, 9 Lea, 475; Telephone Co. v. Turner, 88 Tenn., 265.

4.  **STATUTES. Unambiguous, intelligent, and definite in meaning to be followed by the courts in construction.**

Where the language of a statute is free from doubt or ambiguity, and expresses an intelligent and definite meaning, the courts are bound to assume that this meaning is that which the legislature had in mind, and they are not at liberty to depart from it. (*Post, pp.* 455-461, 463.)

121 Tenn—29

Cases cited and approved: United States v. Fisher, 2 Cranch, 358; Doe v. Considine, 6 Wall., 458; Woodbury v. Berry, 18 Ohio St., 456; Mill Co. v. Muxlow, 115 N. Y., 170; Bradbury v. Wagenhorst, 54 Pa., 180.

5. **COMMON CARRIERS.** Liability of initial carrier for violation of instructions and contract as to icing, reicing, and routing.
  Where the bill of lading limits the liability of connecting common carriers to the one inflicting the injury, the initial carrier will be liable to the shipper for damages caused by its violation of his express instructions given at the time of the delivery of the goods and of its contract as to route and icing and reicing the goods. (*Post, pp.* 463, 464.)

Cases cited and approved: Railroad v. Cabinet Co., 104 Tenn., 568.

---

### FROM DAVIDSON.

---

Appeal from the Circuit Court of Davidson County, to the Court of Civil Appeals, and by writ of certiorari from the Court of Civil Appeals.

SLOSS BAXTER, for Railroad.

ROBERT L. MORRIS, for Richardson.

---

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

The defendant in error, at Wyoming, in the State of New York, delivered to the Buffalo, Rochester & Pitts-

Railroad v. Richardson.

burg Railway a car loaded with pears, and received a few days thereafter a bill of lading, in which it undertook to convey the same, over its own line and connecting lines of the Atlantic Coast Dispatch Company, to Nashville, in this State.

This company, as the record indicates, was a voluntary association of certain railroads for the more expeditious handling and transport of freight passing over their several lines to points beyond. The plaintiffs in error, the Atlantic Coast Line Railroad Company and the Georgia Railroad & Banking Company, were, as we infer, two of the constituent members of this association.

The car in question passed over the lines of several railroads, including those of the plaintiffs in error. On reaching Nashville, the pears were found to be in a decayed and worthless condition, whereupon the present suit was instituted to recover the value of the shipment. As a ground for recovery it was alleged that the defendant carriers were guilty of negligence in failing properly to ice the car containing the pears, and also of unreasonable delay in transportation, resulting in the decay and loss of the fruit. The action was begun by the issuance of an ordinary summons, upon which a return by the officer making this service was indorsed as follows: "Came to hand and executed by reading the process to S. M. Wene, agent of the Atlantic Coast Line Company, and to M. H. Lillard, agent of the Georgia Railroad & Banking Company. . . ."

Upon the coming in of the declaration the plaintiffs in error filed pleas to the jurisdiction of the court. In its plea the Atlantic Coast Line Railroad Company averred that it was a foreign corporation, "created under the laws of the State of Virginia, operating its lines of railroad in the States of Virginia, North Carolina, etc., and wholly outside of Tennessee; that its principal offices were located outside of this State; that S. M. Wene, upon whom service of the summons was made, was its traveling soliciting agent, and was never appointed agent for the company in Davidson county, in this State; that the company had no office or agency in Davidson county, at the time of the transaction out of which the plaintiff's cause of action arose or since; and that this cause of action did not arise within the State of Tennessee, nor out of any transaction had, in whole or in part, within the State of Tennessee."

The plea of the Georgia Railroad & Banking Company was in like form and substance, save that it averred that it was a corporation created and existing under and by virtue of the laws of Georgia; that its lines of railway were altogether outside of Tennessee; that its principal offices were located in Augusta, Ga., and that M. H. Lillard, upon whom service was made, was a traveling soliciting agent of the company, and was never appointed the agent for the company in Davidson county. In all other essential respects the plea of this latter company was similar to the one set out above.

Instead of demurring to these pleas, if bad in law, the plaintiffs joined issue, and the case was heard on evidence pertinent thereto, resulting in a judgment overruling them and putting plaintiffs in error to trial on defenses involving the merits of the case, which resulted in a verdict and judgment adverse to them.

If the trial judge was in error in his ruling on these pleas on abatement, this is determinative of the case, and there will be no necessity of considering the numerous other errors assigned upon his action in the conduct of the cause.

Before coming to the question of law raised by these pleas, it is proper to say that the averments of fact contained in them are, without any contradiction, supported by the evidence in the case. It is only necessary to add that the car containing the pears in question was received from a connecting carrier by the Atlantic Coast Line Railroad Company, at Richmond, Va., and by that company was taken over its own lines to Augusta, Ga., where it was delivered into the possession of the Georgia Railroad & Banking Company, and by it was transported over its lines to Atlanta, Ga., where it was turned over to the custody of the Southern Railway Company, and by it was carried over its several lines to Nashville, the point of destination. Upon these facts the question is: Did the service of process upon these traveling agents bring the plaintiffs in error within the jurisdiction of the circuit court of Davidson county, and authorize a judgment *in personam?*

The answer to this question depends alone upon the proper construction of sections 1, 2, c. 226, p. 386, of the Session Acts of 1887 (sections 4543, 4544, of Shannon's Code). Section 1 of this act provides that any foreign corporation "found doing business in this State shall be subject to suit here to the same extent that corporations of this State are by the laws thereof liable to be sued, so far as it relates to any transaction had in whole or in part within this State, or any cause of action arising here, but not otherwise." The second section defines what is meant by being "found doing business in this State" in these terms, to wit: "Any corporation having any transaction with persons, or having any transaction concerning any property, situated in this State, through any agency whatever, acting for it within the State, shall be held to be doing business here, within the meaning of section 1."

We are at a loss to see how, by the most liberal interpretation, this controversy can be brought within the jurisdictional limits of this statute. These two foreign corporations had no transaction with any person or concerning any property situated in this State, through any agency acting for them, or either of them, within the State. Their transactions were with persons, or corporations, outside the State, and with regard to property, at the time of these transactions, far beyond the borders of the State. The Atlantic Coast Line Railroad Company had its transaction with reference to this property with the common carriers, from

whom it received and to whom it delivered this car load
of freight.    This was equally true with the Georgia
Railroad & Banking Company.

This act of 1887 was passed for the purpose (*Tele-
phone Company* v. *Turner,* 88 Tenn., 265, 12 S. W.,
544) of remedying a defect in our corporation acts,
pointed out in *Chicago & Alton Railroad* v. *Walker,* 9
Lea, 475.    In that case it was held that the Code pro-
visions, which regulate the mode in which corporations
may be sued, did not apply to the case of a foreign cor-
poration having no resident agent, or local office, but
which was alone represented by a traveling agent, not
localized in this State.    To meet this apparent hard-
ship, by section 3 of that act it is provided that "pro-
cess may be served upon any agent" of a corporation
found within the county where the suit is brought, "no
matter what character of agent such  person may
be"; but the effect of this section is necessarily limited
to suits against foreign corporations falling within the
letter and spirit of sections 1 and 2 of the act.    So it
is, while authorizing process to be served on an agent,
whatever his character may be, yet the right of bringing
foreign corporations into the courts of this State is cir-
cumscribed by the terms of sections 1 and 2 of the
act.

It is true that it was held in *State* v. *Insurance Com-
pany,* 106 Tenn., 294, 61 S. W., 75, that "the term, or
phrase, 'doing business' does not and cannot have a
uniform and unvarying  meaning,  but  is  governed

largely by the connection and in view of the object of the statute." And so it was ruled that the Connecticut Mutual Insurance Company, which in the year 1894 recalled its agents and agencies from the State, and from that time ceased to solicit and write new policies, was not doing business in Tennessee, so as to be subject to a privilege tax on its premium receipts from policies theretofore issued, which were sent by mail, or otherwise, to the agents of the company outside the State.

But we see no room for speculation as to the sense in which the terms "doing business in this State" are used in the act of 1887, as the second section, as has already been said, defines those terms, and thus places them beyond the realm of debate.

That this was understood by the court in its disposition of that case is apparent, from the clear line of distinction which the opinion points out between it and that of *Insurance Compay* v. *Spratley,* 99 Tenn., 322, 42 S. W., 145, 44 L. R. A., 442. In this latter case it appeared that the insurance company had issued its policies on the life of Spratley before its withdrawal from the State, had received premiums on these policies to the date of his death, and thereafter sent a special agent into the State to examine into the conditions under which the policies were issued, and, upon such examination having been made and reported, gave authority to this agent to propose a compromise to the beneficiary. Upon these facts it was held that, clearly

within the act of 1887, the insurance company was "doing business in this State," and that service of process on this special agent gave our courts jurisdiction over the controversy between it and the beneficiary as to its liability on the policies. This case was subsequently taken by writ of error to the supreme court of the United States, and was there affirmed by an opinion reported in 172 U. S., 602, 19 Sup. Ct., 308, 43 L. Ed., 569.

The contention of counsel of defendant in error that this suit was maintainable seems to be based on two propositions: First, that the plaintiffs in error were associated with other railroads, including the Southern Railway Company, in something like a partnership agreement, under the name and style of the "Atlantic Coast Line Dispatch," so that, as the latter, the delivering carrier, had lines within this State, the case fell within the act of 1887; and, second, that plaintiffs in error, having agents in Tennessee, with offices at Nashville, soliciting freight for their several lines, were doing business in this State within the meaning of that act, so as to make them amenable to our courts by the service of process on these agents.

As to the first proposition, it need only be said that there is nothing in the record to show that there were any of the features of a partnership in this association, or anything upon which the doctrine of representation, or of principal and agent, as between these railroads, can be invoked. *Post* v. *Railroad,* 103 Tenn., 184, 52

S. W., 301, 55 L. R. A., 481; *United States* v. *American Bell Telephone Co.* (C. C.), 29 Fed., 17.

Nor do we think the second proposition, when applied to the facts of the case, sound. That these foreign corporations were, in a sense, "doing business" in this State through their traveling soliciting agents, is true; and service upon the latter in all cases falling within sections 1 and 2 of the act of 1887, which we are considering, would probably bring them into our courts. But the vice in the proposition is found in that the facts alleged in the pleas, and shown in the evidence, put the case outside the provisions of the statute, as we have already undertaken to establish. Hence, it is that, as "the cause of action" did not arise from "any transaction with persons" or "concerning any property situated in this State through any agency whatever acting" for this corporation "within the State," service on these agents did not give the circuit court jurisdiction of the cause.

It would have been otherwise if, as in the case of *St. Louis, Iron Mountain, etc., Railway Company* v. *Bean* (September term, 1908), these agents had been connected in Davidson county with the transaction out of which the cause of action grew.

It results that the petition for *certiorari* must be granted, the judgments of the court of civil appeals and of the circuit court be reversed, and the case dismissed.

## ON REHEARING.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

This suit is before us on a petition for a rehearing, in which it is urged that the construction we have given to chapter 226, p. 386, of the Session Acts of 1887, is so narrow that it, in effect, defeats the purpose of this legislation.   It is insisted that, realizing the necessity of making all foreign corporations which had agencies of any character in this State, subject to the jurisdiction of our courts, this act was passed.   The argument of petitioner is that the trend of modern legislation and judicial opinion has been to open wide the doors of domestic courts for the purpose of giving suitors redress on all claims which they may have as against a foreign corporation, and that it was in view of this the statute was drafted, and its purpose can only be effected by giving it a liberal interpretation.   There is no doubt, in construing statutes, that it is the duty of the courts to give effect to the intent of the lawmaking power, and to seek for that intent in every legtimate way; but it is well settled that this intention must be sought primarily in the language of the act itself, as the presumption is that the legislature has selected apt words for the expression of its will.   The necessary effect of this is, where it is found upon examination that the language of the act is free from doubt or ambiguity, and expresses an intelligent and definite meaning, the courts are bound to assume that this meaning is that which the legislature had in mind.   To such an extent

has this rule been recognized that, though the court is satisfied some other or different meaning was behind the legislation, and though a literal interpretation might defeat what was well understood to be the purpose of its enactment, "still the explicit declaration of the legislature is the law, and the courts are not at liberty to depart from it." It is only where the statute is ambiguous, or lacks precision, or is fairly susceptible to two or more interpretations, the intended meaning of the act "must be sought by the aid of all pertinent and admissible considerations. But here, as before, the object of the search is the meaning or the intention of the legislation, and the court is not at liberty, merely because it has a choice between two constructions, to substitute for the will of the legislature its own ideas as to the justice, expediency, or policy of the law." Black on Interpretation of Laws, 36; *United States* v. *Fisher*, 2 Cranch, 358, 2 L. Ed., 304; *Doe* v. *Considine*, 6 Wall., 458, 18 L. Ed., 869; *Woodbury* v. *Berry*, 18 Ohio St., 456; *Newell Universal Mill Co.* v. *Muxlow*, 115 N. Y., 170, 21 N. E., 1048; *Bradbury* v. *Wagenhorst*, 54 Pa., 180.

So it is, however tempting the field, with a view of ascertaining the trend of legislation in other States upon this particular subject, into which we are invited by the counsel of petitioner, and uninteresting as it may be to confine our investigation to the examination of the statute in question, for the purpose of ascertaining the intent of the legislature in its enactment, we are satisfied, under the rule above indicated, it is

Railroad v. Richardson.

our duty, first of all, to look to the language of the
act in order to ascertain its meaning, and it is only
when left in doubt, after having done this, we would
be permitted to go afield in search of aid in its inter-
pretation.

The insistence in the present case, notwithstanding
disclaimer to the contrary, we think, comes to this, that
a nonresident suitor has the right to come into one of
our courts and seek redress from a foreign corporation,
against which he happens to have a claim, and subject
that corporation to a judgment *in personam* by a ser-
vice of process upon an agent found in this State, what-
ever may be the character of that agent's representa-
tion, either with regard to his principal or the trans-
action out of which the controversy arose.   There is no
doubt that the plaintiff in this case, nonresident though
he was, had he found property of either, or both, of
these foreign corporations within the jurisdiction of
the lower court, by the process of attachment issuing
under other and distinct statutory provisions, could
have proceeded in that court, and to the extent of the
property so levied upon have obtained relief as against
one or both as the case might be.   But this record is
one in which a personal judgment is sought, and, if
maintainable, is so alone by virtue of the act of 1887,
and it was in construing it we held that the pleas to
the jurisdiction, interposed by these plaintiffs in error,
should have been sustained.   It was said, to avail him-
self of the benefit of this act, the question of jurisdiction

having been properly raised, that the plaintiff below must have shown that his controversy with these corporations grew out of a "transaction had in whole or in part within this State," or "a cause of action arising here," and we held, upon the facts incontrovertibly established, that the plaintiff below had no transaction, either directly or otherwise, with either of these corporations "concerning any properties situate in this State through any agency whatever acting for it within the State," and that "the cause of action" sued upon did not arise here.

We repeat, as was said in the original opinion, we are at a loss to understand how any other view can be entertained of this controversy. The plaintiffs in error were foreign corporations, in law and in fact. Neither one had any transaction with the defendants in error within this State, or concerning any property situate in the State, through any agency whatever acting for it within the State; nor did plaintiff's cause of action arise here. Whatever injury either of them inflicted upon the plaintiff occurred outside of this State. If by failure to reice the car in which defendant's pears were being transported, or if in negligent delay in forwarding it, the fruit was either deteriorated or destroyed, these acts of wrong were committed far beyond the borders of Tennessee. While it is true that it was not ascertained that the pears were in a worthless condition until the car reached its destination in Nashville and were there inspected, yet nevertheless,

whatever grievance the plaintiff below may have suf-
fered at the hands of these plaintiffs in error, it oc-
curred outside of this State.  It was this grievance that
constituted the cause of action of the plaintiff in error.

In view of the statute, it matters not that agents of
these corporations were found within the State upon
whom process could be served.    Their  presence  here
and service of process upon them were not sufficient to
give the domestic court jurisdiction.    The conditions
precedent to the maintenance of a suit, as against their
principals, were those prescribed in the first section of
the act, the meaning of which is clearly expressed in
the second section.  Failing in meeting these essential
conditions, we are satisfied that this failure was nec-
essarily fatal to the action.

It is insisted, however, that the construction which
we give to this statute works great inconvenience to
the owner of the property injured while being trans-
ported over a number of independent, but connecting,
lines of railway, as in such a case it is particularly
impossible for him, in the beginning, to fasten the re-
sponsibility for such injury upon any one of these rail-
roads.   In every case where the bill of lading stipulates
that each one of the carrying roads should be responsi-
ble alone for the injury which it inflicted in transpor-
tation, this difficulty will be generally experienced.
This argument, however, *ab inconvenienti,* cannot be
relied upon to aid in the construction of this statute.
Particularly, however, the defendant in error is in no

attitude to complain in this case, because upon his own showing he had a right of action against the initial carrier, which might have been sued upon in his home court.  By his testimony it appears that this carrier, in violation of an express direction given at the time of the delivery of the goods, routed them over lines other than those selected by the consignor, and provided in his waybill that the car was to be iced, or reiced, only at one point, while the agreement was that reicing was to be done by the successive carriers whenever necessity for this occurred.  For these violations of instruction, we have no doubt that an action might have been maintained.  *Railroad Co.* v. *Cabinet Co.*, 104 Tenn., 568, 58 S. W., 303, 50 L. R. A., 729, 78 Am. St. Rep., 933.