### IN THE

# SUPREME COURT OF TENNESSEE

### FOR THE

## WESTERN DIVISION

---

## JACKSON, APRIL TERM, 1922

---

BANKS GROCERY CO. *v.* KELLEY-CLARKE CO.

(*Jackson.* April Term, 1922.)

1. **CORPORATIONS.** Suit cannot be brought against foreign corporation not doing business in the State.

As a general proposition, a corporation cannot be sued in any State other than that of its origin, unless it is doing business in such other State; and no State has the power to authorize suit against foreign corporations or the service of process on them, unless they are doing business within the State. (*Post, pp.* 584, 586.)

2. **COURTS.** Federal question whether foreign corporation doing business in State.

Whether a corporation is doing business in a State, so as to be suable therein, or so as to render it subject to service of process, is a federal question. (*Post, pp.* 584, 586.)

Acts cited and construed: Acts 1887, ch. 226.

Cases cited and approved: Peterson y. Chicago, R. I. & P. R. Co., 205 U. S., 364; Conley v. Mathieson Alkali Works, 190 U. S., 406; Wold v. J. B. Colt Co., 102 Minn., 386; Saxony Mills v. Wagner & Co., 94 Miss., 233; Green v. Chicago, B. & Q. R. Co., 205 U. S., 530; Case v. Smith L. & Co. (C. C.), 152 Fed., 730; Carpenter v. Willard Case

Lumber Co. (C. C.); 158 Fed., 697; Swarts v. Christie Grain & Stock Co. (C. C.), 166 Fed., 338.

3. **CORPORATIONS.** Service of process cannot be had on sales agent of foreign corporation.

Service of process against a foreign corporation on a sales agent is not a service on the corporation, where the agent is without apparent authority to represent it otherwise. (*Post, pp.* 587, 588.)

Cases cited and approved: Hefner v. American Tube & Stamping Co. (C. C.), 163 Fed., 866; Tyler Co. v. Ludlow-Saylor Wire Co., 236 U. S., 723; Telephone Co. v. Turner, 88 Tenn., 265; Life Ins. Co. v. Spratley, 99 Tenn., 322.

Cases cited and distinguished: People's Tobacco Co. v. American Tobacco Co., 246 U. S., 79; Railroad v. Richardson, 121 Tenn., 458.

4. **CORPORATIONS.** Foreign corporation held not doing business in State, so as to warrant service of process on brokers as agents thereof.

That brokers solicited orders for a corporation, which, when received, were transmitted to it in another State for its acceptance, did not constitute the doing of business in the State, so as to warrant service of process on the brokers as agents of such foreign corporation, under Acts 1887, chapter 226. (*Post, p.* 588.)

FROM SHELBY.

Appeal from Chancery Court of Shelby County.—HON. F. H. HEISKELL, Chancellor.

EWING, KING & KING, for appellant.

FRANCIS FENTRESS, for appellee.

MR. JUSTICE HALL delivered the opinion of the Court.

The original bill in this cause was filed on September 20, 1920, by complainant, a Tennessee corporation engaged in

the wholesale grocery business in Memphis, alleging that defendant, Kelley-Clarke Company, is a nonresident corporation having its home office at Seattle, in the State of Washington, and the brokerage firm of Carver & Griffith represented defendant in the distribution of its products in Memphis; that complainant, by written contract, bought five hundred cases of salmon from defendant, which, upon delivery, was found to be defective and unfit for food, and on account of which a decree against defendant for three thousand five hundred dollars was sought.

Subpœna to answer was issued to the sheriff of Shelby county as follows:

"Summons Kelley-Clarke Company (serve on Carver & Griffith, agent)."

Upon this summons the sheriff made the following return:

"Executed on Kelley-Clarke Company by reading this writ to C. N. Carver and D. L. Griffith, agents, and leaving copy of bill with D. L. Griffith."

Defendant filed a plea in abatement to the bill, in which it was averred that defendant was a corporation organized under the laws of the State of Washington, with its office and place of business in the city of Seattle, and that it had no corporate existence under the laws of Tennessee; that it had no agent in Shelby county; that neither C. N. Carver nor D. L. Griffith was its agent; that it had no office or agency in Tennessee, and that it was not doing business in said State in any way or manner; that the sale of goods alleged in the bill was made in the State of Washington, and not made in the State of Tennessee; and that all matters alleged in the bill pertaining to said contract of sale occurred outside of the State of Tennessee.

Complainant joined issue upon this plea, but subsequently, and before any action had been taken by the court upon said plea, complainant, by leave of the court, filed an amended and supplemental bill, seeking to proceed against defendant under chapter 226 of the Acts of 1887. This amended bill alleged as follows:

"For many years Carver & Griffith have represented the defendant in Memphis, Tenn., and, while not authorized generally to make contracts on behalf of Kelley-Clarke Company, the system of business pursued is as follows: The defendant will keep Carver & Griffith posted from time to time on the market price at which it will sell goods the defendant has to sell, and when an offer is made to Carver & Griffith by a jobber, it is understood and known that Carver & Griffith will transmit by wire that offer to Kelley-Clarke Company, and if Kelley-Clarke Company are willing to accept the offer the transaction is consummated by Carver & Griffith notifying the prospective buyer of the particular commodity that his offer is accepted. Frequently, on behalf of Kelley-Clarke Company, the said Carver & Griffith will obtain jobber's offers and transmit same to Kelley-Clarke Company, with the name of the offerer, and if that offer is accepted the offerer is so notified and the transaction consummated.

"Kelley-Clarke Company send out from time to time what they term a statistical circular or letter, and this is addressed by Kelley-Clarke Company 'to our brokers,' and invariably such a circular is sent to Carver & Griffith, addressed as a broker."

A subpœna to answer this amended bill was issued and directed to the sheriff, commanding him to summons C. N. Carver and D. L. Griffith to answer the same.

The sheriff made the following return: "Executed by reading the subpœna to answer to both C. N. Carver and D. L. Griffith, members of the firm of Carver & Griffith, and by leaving with them a copy of the amended and supplemental bill.    Said service is had upon Kelley-Clarke Company as above, because of the averment that Carver & Griffith represented the defendant corporation at the time the transaction out of which the suit arises took place."

The clerk and master certified that he sent, by registered mail, a copy of the original, amended, and supplemental bills and process, with returns on same, to defendant at Seattle, Wash., and that he made a minute entry of same on the docket of the court.

George H. King made an affidavit, before a notary public at Seattle, that at the request of complainant he had lodged with the highest officer of defendant to be found a copy of a notice which he attached to his affidavit, and a copy of the process issued and returned by the sheriff. This notice, addressed to defendant, advised it of the bringing of suit against it by complainant in the chancery court of Shelby county, Tenn., and stated that certified copies of the original and amended and supplemental bills were handed to it, and copies of process issued and returns thereon.    The notice stated that these documents were furnished by virtue of chapter 226, Acts of 1887; in fact, it is not questioned by defendant that chapter 226, Acts of 1887, was strictly complied with.

Defendant filed a plea in abatement to this amended bill, challenging the jurisdiction of the court upon the ground that it was a foreign corporation created under the laws of the State of Washington; that its domicile or place of business was in Seattle, in that State, and that it had neither an agent nor property in Tennessee at the

time of the sale, or at the time of the institution of this suit; and that the sale was made in the State of Washington, and not in Tennessee. It also stated that Carver & Griffith were merchandise brokers in Memphis, and were not generally in defendant's employ, and in the alleged sale to complainant they represented defendant as brokers, and for their services in procuring the order of sale they were paid a brokerage or commission for the specific order of sale obtained. The plea also denied that Carver & Griffith were authorized as a matter of law to accept service for defendant, and likewise denied that defendant was doing business in Tennessee.

The written contract of sale was attached to and made a part of the plea in abatement. The plea was subsequently amended by agreement of counsel by adding a paragraph to same, in which it was averred that the claimed service under the amended and supplemental bill, by again serving process upon Carver & Griffith, and by sending certified copies of the pleadings and process through the mail to defendant by the clerk and master, and the delivery of like copies and notice of suit to defendant at Seattle by George H. King, was not due process of law, and did not bring defendant within the jurisdiction of the court.

To this plea in abatement complainant demurred. Its demurrer was sustained by the chancellor, who permitted the defendant to appeal to this court.

By its only assignment of error defendant insists that the chancellor erred in holding that it had been served with due process of law, and was therefore legally before the court.

As a general proposition, a corporation cannot be sued in any State other than that of its origin, unless it is doing business in such other State, and no State has the power

to authorize suits against foreign corporations, or the serv-ice of process upon them, unless they are doing business within the State. In order that a corporation may be servable with process issued in a suit commenced in a State other than that of its origin, it must have engaged in busi-ness therein to the extent that it may be said, in legal par-lance, to be doing business in the State. Whether a corpo-ration is doing business in a State, so as to be suable there-in, or so as to render it subject to the service of process is a federal question. *Peterson* v. *Chicago, R. I. & P. R. Co.,* 205 U. S., 364, 27 Sup. Ct., 513, 51 L. Ed., 841; *Conley* v. *Mathieson Alkali Works,* 190 U. S., 406, 23 Sup. Ct., 728, 47 L. Ed., 1113; *Wold* v. *J. B. Colt Co.,* 102 Minn., 386, 114 N. W., 243.

In *Saxony Mills* v. *Wagner & Co.,* 94 Miss., 233, 47 South., 899, 23 L. R. A. (N. S.), 834, 136 Am. St. Rep., 575, 19 Ann. Cas., 199, it was held that a traveling agent of a foreign corporation having no office or place of business in the State, but who resides there, is not within the pro-visions of the statute that, if the defendant in any suit be a corporation, process may be served on the president, the cashier, secretary, treasurer, clerk, or agent of the corpo-ration or upon any one of its directors.

It was also held in that case that a corporation cannot be said to be doing business within the State from the mere fact that it sells goods there through the efforts of traveling salesmen, só as to bring it within the jurisdiction of the State courts.

In *Green* v. *Chicago, B. & Q. R. Co.,* 205 U. S., 530, 27 Sup. Ct., 595, 51 L. Ed., 916, it was held that a railroad company was not doing business in a State other than that of its origin, so as to be suable therein or subject to serv-ice of process therein, because it employed an agent in

such State whose business it was to solicit and procure passengers and freight to be transported over its line, and who in conducting its business employed several clerks and various passenger and freight agents. This agent, however, sold no tickets and received no payment for transportation of freight, although he took money of prospective patrons and issued orders for tickets, which gave a passenger the right to receive a ticket at the office of the railroad company in another State on presenting such order. The agent also occasionally sold to railroad employees having tickets over intermediate lines orders for reduced rates over the line of the company he represented, and in some cases, for the convenience of shippers who had received bills of lading from the initial line for goods routed over his company's line, he gave in exchange bills of lading over his company's line, but these bills of lading recited that they would not be in force until the freight had been actually received by his company.

In *Case* v. *Smith L. & Co.* (C. C.), 152 Fed., 730, it was held that the maintenance by a corporation of an office in another State, in charge of a sales agent who takes orders for goods and transmits them to the home office for acceptance and to be filled was not doing business in such State.

It was also held in *Carpenter* v. *Willard Case Lumber Co.* (C. C.), 158 Fed., 697, that a corporation by filling orders for goods, taken in another State by a local company to whom a commission is paid, is not thereby doing business in the State.

In *Swarts* v. *Christie Grain & Stock Co.* (C. C.), 166 Fed., 338, it was held that a corporation was not doing business in another State by accepting bucket shop business, turned over to it by a person in the bucket shop busi-

ness in such State, to whom it allowed a commission on such business.

Service of process against a foreign corporation upon a sales agent is not a service upon the corporation, where the agent is without apparent authority to represent it otherwise. *Hefner* v. *American Tube & Stamping Co.* (D. C.), 163 Fed., 866.

In *People's Tobacco Co.* v. *American Tobacco Co.*, 246 U. S., 79, 38 Sup. Ct., 233, 62 L. Ed., 587, Ann. Cas., 1918C, 537, the court said:

"The question as to what constitutes the doing of business in such wise as to make the corporation subject to service of process has been frequently discussed in the opinions of this court, and we shall enter upon no amplification of what has been said. Each case depends upon its own facts. The general rule deducible from all our decisions is that the business must be of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the State or district where service is attempted. . . . As to the continued practice of advertising its wares in Louisiana, and sending its soliciting agents into that State, as above detailed, the agents having no authority beyond solicitation, we think the previous decisions of this court have settled the law to be that such practices did not amount to that doing of business which subjects the corporation to the local jurisdiction for the purpose of service of process upon it."

To the same effect is the rule announced in *Tyler Co.* v. *Ludlow-Saylor Wire Co.*, 236 U. S., 723, 35 Sup. Ct., 458, 59 L. Ed., 808.

Chapter 226, Acts of 1887, has been held by this court

to apply only to foreign corporations found doing business. in this State. *Telephone Co.* v. *Turner,* 88 Tenn., 265, 12 S. W., 544; *Life Insurance Co.* v. *Spratley,* 99 Tenn., 322, 42 S. W., 145, 44 L. R. A., 442.

In *Railroad* v. *Richardson,* 121 Tenn., 458, 117 S. W., 498, this court used the following language: "Nor do we think the second proposition, when applied to the facts of the case, sound. That these foreign corporations were, in a sense, 'doing business' in this State through their traveling soliciting agents, is true; and service upon the latter in all cases falling within sections 1 and 2 of the Act of 1887, which we are considering, would probably bring them into our courts. But the vice in the proposition is found in that the facts alleged in the pleas, and shown in the evidence, put the case outside the provisions of the statute, as we have already undertaken to establish. Hence, it is that, as 'the cause of action' did not arise from 'any transaction with persons' or 'concerning any property situated in this State through any agency whatever acting' for this corporation 'within the State,' service on these agents did not give the circuit court jurisdiction of the cause."

According to the allegations of the amended bill, Carver and Griffith were mere brokers, and had no authority to make contracts on behalf of defendant. Their authority did not extent beyond that of soliciting orders for defendant, which, when received, were transmitted to defendant in Seattle for its acceptance. This did not constitute a doing of business by defendant in this State, according to the authorities above cited.

The chancellor, therefore, committed error in sustaining the complainant's demurrer to defendant's plea in abatement, and his decree is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.